JOHN J. REINHARDT et al., Respondents, v. WALTON H. HOLMES and WM. E. SWENTZEL, Appellants.

**Kansas City Court of Appeals, April 4, 1910.**

1. **NEGLIGENCE: Ruined Wall: Party Wall: Landlord and Tenant: Strangers: Act of God: Accident.** The owners of adjoining tracts had a party wall agreement by virtue of which each was the owner of one-half of the wall with cross easements as to the use thereof. On one tract was a five-story building owned by Holmes, on the other a two story building owned by Swentzel. The Holmes building was occupied under lease by a transfer company, the Swentzel building was occupied under lease by the plaintiffs who conducted a grocery store therein. On August 2, 1905, a fire practically destroyed the Holmes building leaving the party wall standing, but with its strength impaired. The following day Holmes undertook to repair this wall but delayed the work. September 7, 1905, the city notified him to remove the upper three stories of the wall, but he failed to do so promptly. September 16, 1905, the wall fell as the result of a severe but not unusual storm and greatly damaged plaintiffs' stock. They sued Holmes and Swentzel. *Held*: (a) The storm which was the immediate cause of the fall of the wall was not such an unusual occurrence as to come within the definition of an act of God; (b) Although the fire was the result of an accident, the defendants had a reasonable opportunity thereafter to avoid this particular result of that accident; (c) While ordinarily a landlord who has leased a building not defectively constructed is not liable for a nuisance arising while the building is in the control of the tenant, yet where he enters possession and assumes charge of, for example, a dangerous wall, he becomes charged with the performance of the duty to third persons owed by the owner and occupier of the premises, and if negligent in the performance of that duty he will not be heard to deny responsibility for his own acts; (d) Under the facts in

Reinhardt v. Holmes.

this case plaintiffs were not tenants as to the upper three stories of the party wall, the fall of which caused the injury, and therefore they occupied the position of strangers to the owners of that part of the wall, and as both of the owners negligently suffered the maintenance of a nuisance on their premises, they are liable to the innocent sufferers from their tort.

2. **LANDLORD AND TENANT: Duty to Repair.** Ordinarily the tenant and not the landlord must keep his premises in repair, and such tenant is prima facie liable to third persons injured as the result of this breach of duty. This duty may be assumed by the landlord by express agreement.

3. ————: ————: **Party Wall: Agreement: Covenants Running With Land.** Where a party wall agreement expressly provides that the covenants shall run with the land, it is a running covenant, the effect of which is to create an interest in the premises.

4. ————: ————: ————. Under the facts in this case the original owners of this wall were not tenants in common, but each owned the part of the wall which stood on his own land and the title of each was qualified by a cross-easement in favor of the other, and this relation continued with all of the subsequent owners.

5. ————: ————. Under the facts in this case Swentzel was not the holder of an option to use the wall if he chose, but he was a half owner of the whole of it.

6. ————: ————: **Lease: Construction.** In determining the status of the parties to a lease the intention is to be ascertained from the instrument itself. The character and surroundings of the leased premises are also important factors to be considered in determining the extent of the demise as intended by the parties.

7. **NEGLIGENCE.** In the absence of a duty there can be no negligence.

8. **PRACTICE: Weight of Evidence.** In passing on a demurrer to the evidence the facts in dispute must be viewed in the light most favorable to plaintiff.

Appeal from Jackson Circuit Court.—*Hon. E. R. Morrison,* Special Judge.

AFFIRMED.

*John A. Eaton* and *E. H. McVey* for appellant, Wm. E. Swentzel.

(1)   The party wall agreement provided that the ownership in the party wall acquired by Fredricka D. Evans and Henry F. Evans, grantors of Swentzel, runs with the land, and thereby it became a part of the land covered by the description of lot 115 in block 8, McGee's addition.   These rights inured to the future owner or owners of the above named lot.   See Exhibit 1, abstract 32-34; 30 Cyc. 794; Huston v. deZeng, 78 Mo. App. 531; Mickel v. York, 51 N. E. 848; Bagley v. Rose, 110 Mo. App. 344; 7 Cyc. 1044.   (2)   Swentzel leased to Alfred Holtman lot 115 and the building to be erected thereon, the lease expressly stipulating with reference to the right in the owner of the lot to build additional stories upon the party wall.   The wall, in so far as it stood on lot 115, and in so far as it was a part of the property of Swentzel, passed to the tenant, Holtman, as a part of the lease.   The lease of Holtman to the plaintiffs, Reinhardt Brothers, contains provisions similar to the lease from  Swentzel to Holtman, and the contract relations in respect to the premises, so far as the party wall is concerned, passed to Reinhardt Brothers in the same way as the title that they obtained by their lease passed to Holtman.   24 Cyc. 975-979; Jones on Landlord and Tenant, sec. 445; 6 Words and Phrases, 5511; Sherman v. Williams, 113 Mass. 481; Lanpher v. Glenn, 37 Minn. 4, 33 N. W. 10; Humeston v. Wheeler, 175 Ill. 514, 51 N. E. 893; McMillan v. Sullivan, 43 Ala. 536; 7 Cyc. 1044; Grogan v. Foundry Co., 87 Mo. 327.   (3)   The relations of the parties must be determined by the contracts, consisting of the party wall agreement, the lease of Swentzel to Holtman, and of Holtman to the plaintiffs; and, in this respect, the relations are entirely different from those existing between Reinhardt Brothers and Walton H. Holmes, the other defendant.   And upon all questions of negligence,

the rights of the plaintiffs and Swentzel must be determined with reference to these contract relations, and therefore cannot rest on any duty that Swentzel may have owed to the plaintiffs as strangers. 24 Cyc. 925, 986; Geer v. Zinc Co., 126 Mo. App. 173; Ward v. Fagin, 101 Mo. 669; Jones on Landlord and Tenant, secs. 102, 445. (4) The contract relations between plaintiffs, through Holtman, with Swentzel, must govern in respect to any negligence which may have occasioned the falling of the party wall. The lease between Swentzel and Holtman provided that Holtman, the lessee, should "take good care of the building and premises." The lease from Holtman to Reinhardt Brothers, the plaintiffs, contains the same language. The words "good care" have to do with the subjects of diligence or negligence. The plaintiffs thereby expressly contracted to exercise "good care" in respect to the building and premises, the subject of the lease, and having so contracted, they cannot charge a failure to exercise such care upon the defendant, Swentzel. Conklin v. School District, 22 Kas. 525; Wright v. Tileston, 61 N. W. 824. (5) In view of the contract requiring the exercising of "good care" on the part of the plaintiffs, it is wholly immaterial as to whether the lease to plaintiffs conveyed any interest in the party wall or the property therein. When it was injured, it became a menace, was subject to the exercise of care in respect to the injury it might inflict, and the plaintiffs had contracted to exercise such care. Andrus v. Bradley, 117 Mo. App. 325; Taylor on Landlord and Tenant, secs. 343-628; Bennett v. S. & M. Co., 46 So. 211. (6) It being a conceded fact in the record that plaintiffs exercised no care in respect to the menace occasioned by the injured party wall, it is thereby an undisputed fact in the case that the plaintiffs have violated their agreement in respect to the exercise of care upon their part, and, having thereby violated such contract, they cannot charge the plaintiff, Swentzel, for whose benefit

the agreement was made, with any failure upon his part to exercise care, the effect being that the cause of the accident must be attributed to the failure on the part of the plaintiffs to exercise "good care," which was, by virtue of the contracts, obligatory upon them. Grogan v. Foundry Co., 87 Mo. 321; Wood on Landlord and Tenant, secs. 538-541. (7) The rule governing the obligation or duty resting upon an owner of property with respect to dangers which may injure others, cannot be applicable in this case as between the plaintiffs and Swentzel, for the reason that their relations are established under the provisions of the leases and the agreements therein contained, and, therefore, the case, as based upon the alleged negligence of Swentzel, is entirely different from the case as submitted to the jury upon all of the instructions as based upon the duty resting upon an owner of property with respect to strangers, and the whole theory of the case as submitted by the trial court is, therefore, mistaken and erroneous. Ward v. Fagin, 101 Mo. 669; Graff v. Brewing Co., 30 Mo. App. 623; Roberts v. Cottey, 100 Mo. App. 503; Doupe v. Genin, 45 N. Y. 119; McGinley v. Trust Co., 168 Mo. 264; Herdt v. Koenig, 137 Mo. App. 589; Grant v. Tomlinson, 138 Mo. App. 222, 119 S. W. 1079; Marchek v. Klute, 133 Mo. App. 280; Glenn v. Hill, 210 Mo. 296; Jones on Landlord and Tenant, sec. 613. (8) The defendant Swentzel's demurrer to the evidence should have been sustained, because: (a) There is no proof anywhere in the evidence of any negligent omission or negligent act on the part of the defendant Swentzel. (b) His duty in respect to caring for the premises was obligatory upon the plaintiffs under the contract of lease made by them with Holtman. Ward v. Fagin, 101 Mo. 669; Marchek v. Klute, 133 Mo. App. 280; Crawshaw v. Sumner, 56 Mo. 517; Lexington Lodge v. Beall, 49 So. 833. (c) With plaintiffs' knowledge, the authorities and officers of the city, pursuant to ordinances of the city, had

undertaken to afford protection and had decided upon the course to be pursued, and under employment from Mr. Holmes, Swentzel's co-defendant, the wall had been braced, and the premises leased had been occupied for that purpose with the knowledge and consent of plaintiffs. This being true, upon the return of Swentzel to the city, he should not have taken any other act or done anything other than what had been done. Kiley v. Kansas City, 69 Mo. 102; Grogan v. Foundry Co., 87 Mo. 321; Huston v. deZeng, 78 Mo. App. 531; Clark and Skyles Law of Agency, secs. 33, 920; Ryman v. Hamilton, 111 Mass. 245; Cunningham v. Washburn, 119 Mass. 224; Choteau v. Godden, 39 Mo. 229; Sewell v. Holland, 61 Ga. 608. (d) In the exercise of care, if defendant Swentzel was in duty bound to take any steps regarding the menace or danger occasioned by the party wall, he did fully perform such duty in abiding by the acts of the officers of the city, and negligence cannot be imputed or charged from his failure to violate such acts or take a different course from that prescribed and directed by the city. Kansas City v. Huling, 87 Mo. 203.

*Daniel B. Holmes* for appellant Walton H. Holmes.

*Jamison, Elliott & Ostergard* for respondents.

JOHNSON, J.—Plaintiffs, tenants of defendant Swentzel, sued their landlord and defendant Holmes for damages to a stock of groceries caused by the fall of a party wall owned by defendants who are adjoining property-owners. A trial to a jury resulted in a verdict and judgment against both defendants in the sum of five thousand dollars. Defendants appealed.

Swentzel owned a two-story brick business house in Kansas City and Holmes owned a five-story brick business house on the lot adjoining on the south. A

party wall dividing the buildings was built on the line so that one-half of the wall was on the land of each owner. This wall was built under oral agreement between Holmes and Mrs. Evans who then owned the lot afterward conveyed to Swentzel, but in 1889, Holmes and Mrs. Evans, together with their respective consorts, entered into a written contract which referred not only to the wall we have mentioned, but also to the party wall on the south side of the Holmes building. Mrs. Evans also owned the lot adjoining the Holmes building on the south. The contract, which was acknowledged and recorded, recited "that it was understood and agreed (in the oral contract) that such walls should be party walls and that said Evans should pay to said Holmes part of the cost thereof and thereupon become one-half owner of each of such walls and entitled to use them or either of them as party walls in any building now upon said land or hereafter to be erected thereon; that the amount so to be paid by said Evans to said Holmes has been ascertained and agreed upon to be thirty-two hundred and seventy-five dollars on account of each wall and said Evans has accordingly paid to said Holmes sixty-five hundred and fifty dollars." The contract then provided "that each of said walls shall be a party wall . . . that either party shall have the right to run up or build said walls higher than they are now . . . upon the total destruction of either of said walls by fire or accident . . . this contract shall terminate as to the wall so destroyed . . . such repairs as are necessary shall be done . . . by either party and one-half the cost shall be paid by one side and the other half by the other side, namely one-half by Holmes or those holding under him and one-half by Evans or those holding under her. All covenants herein made and rights granted shall run with the land and things required to be done by and rights granted to either party thereto shall be done by and inure to the future owner or

owners of the land upon which the walls stand . . . This contract shall be cónsidered and treated as a separate and distinct contract affecting each wall separately," etc.

Mrs. Evans sold and conveyed the lot north of the Holmes building to Swentzel and in 1902 Swentzel erected the two-story building and leased it for a term of five years to Alfred Holtman. The lease recited that the lessor "is the owner of lot 115 in block 8, McGee's addition to Kansas City, and proposes to erect thereon a two-story brick building," and provides for the leasing of the building when completed on terms and conditions among which were the following:

"First. That if it is decided later on to add upper stories to the building, the said Holtman will make no claim for compensation or damages for any inconvenience or annoyance which may be caused by the building of such additional stories.

"Second. That the said Holtman will undertake to work the freight elevator at his own risk and cost.

"Third. That the said Holtman will supply his own heat.

"Fourth. That the said Swentzel is to have the right to put in a passenger elevator, should one be desired in the future, without paying compensation to the tenant in respect of the space occupied, or in consequence of inconvenience or damage to the tenant during the erection of such elevator.

"It is further agreed by the said Holtman that he will repair all injuries or damages done by him to the premises during his occupancy or pay for the same; that all of his property situated on said premises, whether subject to legal exemption or not, shall be bound and subject to a lien for and securing the payment of said rents and damages; that he will take good care of the building and premises, prevent waste, keep them free from filth, from danger of fire or any nuisance and from all uses forbidden in any fire insurance

policies issued thereon, defend and indemnify the said Swentzel from all damages and charges for such; that the building and premises shall be kept clean, fairly treated and left so."

In the following year, Holtman sublet the premises to plaintiffs on terms that bound plaintiffs to all the terms and conditions of the lease which was in full force at the time of the injury which occurred September 16, 1905. In 1902, Holmes leased his five-story building to a transfer and storage company for a term of five years under a written lease which required the lessee to "repair all injuries or damages done to the premises during its occupancy" and to "take good care of the building and premises and keep them free from filth, from danger of fire or any nuisance and protect and defend the owner from any charges for such."

August 2, 1905, a fire destroyed the Holmes building. The west wall and the north party wall were left standing but in a damaged condition. The following day, Holmes visited the scene of the fire where by appointment, he met the superintendent of buildings and the building inspector of Kansas City. A contractor named Flowerree, a cousin of Holmes, also was present and during the meeting another contractor, one Bovard, was called in. He was experienced in the business of protecting dangerous walls of that kind. Neither Swentzel, plaintiffs, nor the tenant of Holmes was represented at that meeting. The evidence is contradictory as to what occurred, but one fact is clear beyond dispute: Holmes did not disclaim responsibility for the party wall, but, by his own admission, undertook and agreed to do all that was necessary to prevent the wall from falling. There is evidence, introduced by plaintiffs, to the effect that Holmes was informed by the building inspector that the wall should be torn down at once, but this is denied by Holmes who says that all agreed it would be safe to brace the wall.

On account of the adjustment of the insurance, Holmes did not wish it torn down except as a matter of necessity. Holmes employed Bovard to prop it and paid him for his services. Immediately following the meeting, Holmes fell ill of typhoid fever, was unable to transact business and, thereafter, was represented in the transactions, of which we shall speak, by his kinsman, Flowerree.

September 7th, the superintendent of buildings, pursuant to authority given him by an ordinance of the city, served written notice on Holmes to begin at once the removal of the three upper stories of the walls of the burned building. Flowerree made a pretence of complying with this order but the insurance had not been adjusted and we think the evidence of plaintiffs tends to show that with reasonable diligence, the walls could have been torn down in three or four days and that Flowerree purposely delayed the work. Nine days after the service of the notice, the party wall had not been touched. That night a heavy storm of wind and rain caused it to give way and fall on the two-story building occupied by plaintiffs. The building was wrecked and plaintiffs' stock was damaged greatly. A week later, Holmes and his tenant entered into a written contract for the cancellation of their contract of lease. Swentzel was out of the city when the fire occurred and did not return until two weeks later. He did nothing towards the protection of his building from the threatening party wall. The petition founds the cause of action on negligence of both defendants. It alleges that defendants "and each of them negligently and carelessly failed to repair and make safe and secure said party wall above the top of plaintiffs' said store building, and negligently and carelessly failed to take down said wall or to make the same secure and safe . . . that by reason of said negligence of defendants and each of them, that part of said party wall above the top of plaintiffs' said store and said store

building did, on the night of September 16, 1905, on account of its said burned, weakened, unsupported, insecure and unsafe condition, fall upon the said store," etc.

Each defendant requested the court to instruct the jury to return a verdict in his favor and what we shall say in the disposition of the questions arising under these demurrers to the evidence will dispose of the case.

First, we address ourselves to the liability of defendant Holmes. In passing on the demurrer to the evidence, we shall view the facts about which there is a dispute in the light most favorable to plaintiffs and in doing this, we assume as proved the contention of plaintiffs that the manner in which Holmes and his agents conducted the work of protecting the Swentzel building from the dangerous wall was negligent, at least, after the reception of the notice given by the city officials to tear it down. The inference is reasonable that with knowledge that the wall was in a condition so dangerous as to be a menace to the lower building, the agent of Holmes refrained from employing reasonable diligence to remove the danger. We cannot say, as a matter of law, that the storm was the proximate cause of the injury. It was severe, but we think the jury was right in concluding that it was not unprecedented. To us it appears to have been a seasonable storm of not unusual severity. Certainly we shall not classify it as an act of God. If defendant Holmes owed plaintiffs any duty of protecting them from the wall, he should have acted in anticipation of the possible occurrence of such storms and his failure so to do would be negligence. It is conceded the fire which destroyed the Holmes building and thereby created a menace to the adjoining building was accidental. That being true, neither the owner nor the tenant of the destroyed building could be held liable on account of the dangerous walls until a reasonable opportunity had been

afforded for the discovery and removal of the danger. But after the lapse of such opportunity the negligent failure to remove the danger made of it a nuisance and it is our present purpose to ascertain whether Holmes, the owner of the premises, should be held liable for the maintenance of such nuisance or should be suffered to take refuge behind his tenant. In Deutsch v. Abeles, 15 Mo. App. 398, it is said:

"In the absence of anything tending to show any obligation on the part of the landlord to repair, we do not see how he can be held liable for a nuisance created by his tenant . . . The landlord's liability in respect to the possession is suspended, except as to matters of defective construction existing when the premises were let. The general rule undoubtedly is, that the landlord is not liable for a nuisance created by the act or neglect of his tenant."

In Grogan v. Foundry Co., 87 Mo. l. c. 327, the Supreme Court say: "During the life of the lease, they (the lessors) were not owners, and inasmuch as the nuisance was neither created nor maintained by them, but by the lessees, we know of no principle upon which an action could have been upheld against such owners."

And in Pope v. Boyle, 98 Mo. 527, the Supreme Court say: "Ordinarily the landlord is not liable for injuries arising from a nuisance whilst the property is in the possession and under the control of the tenant."

We thus expressed the rule invoked by Holmes: "As between landlord and tenant there is no general obligation upon the former to keep the premises in repair when he has made no express contract to do so. And, if the premises are in good repair when demised, but afterward become ruinous and dangerous, the landlord is not responsible therefor either to the occupant or to the public, unless he has expressly agreed to repair. [Mancuso v. Kansas City, 74 Mo. App. l. c. 143.]

"By the common law the occupier, and not the landlord, is bound, as between himself and the public, so far to keep buildings in repair that they may be safe for the public; and such occupier is prima facie liable to third persons for dangers arising from any defect." [City v. Spaulding, 4 Cush, 227.]

This rule is not without its exceptions, but it is not necessary to consider any of the exceptions since we find the rule itself to be inapplicable to the facts of this case. Concede, for argument, that the lease from Holmes to his lessee by its terms made the lessor alone liable to respond in damages for any nuisance set up and maintained on the premises during the term, that did not preclude Holmes, the landlord, from taking to himself the performance of his tenant's duty to third persons. Grant that "if there is no duty there can be no negligence" (Shearman & Redfield on Negligence [5 Ed.], section 8), and that "to make any man liable for a tort, he must have done or omitted to do a duty imposed upon him by law. In the absence of such a duty, there is no liability." [Lucas v. Railway, 174 Mo. l. c. 277.] The defendant Holmes did omit to perform a duty imposed on him by law. When voluntarily and with the tacit consent, at least, of his tenant he entered into possession of the demised premises and assumed charge of the dangerous wall, he became charged with the performance of the duty owed by the owner and occupier of the premises to third persons and, being negligent in the discharge of that duty, he will not be heard to repudiate his own acts and deny responsibility for them.

This brings us to the question of whether plaintiffs are to be regarded as third persons or as standing in the shoes of their landlord with respect to the party wall. If plaintiffs were strangers to Holmes, they have made out a cause of action against him, but if they were lessees of that part of the wall above the top of their building, we think they have no case against him.

This question is so involved with that of Swentzel's liability to plaintiff that we shall discuss them together. The rule is well recognized that "Where a party wall agreement expressly provides that the covenants thereof shall run with the land, it will be construed as running with and charging the land, the effect of the covenant being to grant or create an interest in the premises." [30 Cyc. 794.]   The party wall contract, to which Swentzel's grantor was a party, created an interest in the premises, since it provided expressly that its covenants should run with the land.   Mrs. Evans bought and paid for a half interest in the whole wall.   She and Holmes were not tenants in common, but each became the owner in severalty of his own part of the wall and the land on which it stood, but the title of each was qualified by a cross-easement in favor of the other.   [Huston v. deZeng, 78 Mo. App. 531.] Swentzel succeeded to all the rights and interest of Mrs. Evans, his grantor, and also took his title subject to all the burdens and obligations of the party wall agreement.   When, on account of the fire, the wall became dangerous, it was as much his duty (unless he demised the whole wall to plaintiffs) to remove the danger, as it was the duty of Holmes, the co-owner of the wall to remove it.   Swentzel was not the mere holder of an option to use the wall if he chose, but, as we have said, was a half owner of the upper three stories as well as of the lower two.   We do not agree with defendants that plaintiffs were the lessees of that part of the wall above the building occupied by them.   Their lease did not expressly demise that part of the wall, but, to the contrary, it contained reservations by the lessor which indicated a purpose on his part of retaining the dominion over and right to use that part of the wall. "That which passes under a lease depends upon the intention of the parties to be ascertained from the instrument itself.   The character and surroundings of the

leased premises are also important factors to be considered in determining the extent of the demise as intended by the parties." [Bagley v. Rose, 110 Mo. App. 344.]

Manifestly, it was not the intention of the parties that the upper part of the wall should be included in the demise. As to that part of the wall, the relation of plaintiffs to each of the defendants was that of third persons. Both defendants negligently suffered a nuisance to be created on their premises and negligently maintained it. Plaintiffs, the innocent victims of this tort, have a cause of action against both wrongdoers. The learned trial judge did not err in overruling the demurrers to the evidence.

What we have said answers the criticisms of the instructions. The case was tried without error and the judgment is affirmed. All concur.