**STATE of Missouri, Respondent,**

v.

**David ROPER, Appellant.**

**No. 40741.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 23, 1979.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 14, 1979.

Application to Transfer Denied
Jan. 15, 1980.

Robert E. Ahrens, Ahrens & Bauer, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Michael P. Donegan, Asst. Attys. Gen., Jefferson City, Rolin T. Boulware, Pros. Atty., Shelby County, Shelbina, for respondent.

REINHARD, Presiding Judge.

Defendant appeals from his conviction by the court in a jury-waived trial for the offense of possession of more than thirty-five grams of marijuana. The court sentenced him to serve a term of three years in the Department of Corrections.

In late May, 1977, Frank Chapin, a land-owner in Shelby County near Clarence, Missouri, observed a little blue car parked on a country road. Upon investigation, Chapin discovered the defendant, a stranger to the area, coming out of a field carrying a coffee can and a shovel. Defendant said he had been digging fishing worms. Chapin took down defendant's license number. In July of 1977, several patches of cultivated marijuana were discovered in the same area of Shelby County near Clarence. One of the patches of marijuana was found near the area where Chapin had seen defendant. After the discovery of the patches, the sheriff was notified and it was decided the area should be watched. On August 18, James Rufener observed a red auto parked on the road near a patch. The license number was the same as the one taken down by Chapin in May and was subsequently found to belong to defendant. Rufener called Chapin to tell him "they're back after the marijuana." By a C.B. radio Rufener notified the highway patrol. Rufener and Chapin pursued the car until it was stopped near Shelbina by Sam Buckman, a deputy sheriff, who had received the report over his radio.

When Buckman stopped the vehicle, he saw on its roof a pair of muddy high-top jungle boots. As defendant handed Deputy Buckman his driver's license, Buckman detected a smell coming from the car which he thought to be marijuana. In his work as deputy sheriff, Buckman had been involved in several marijuana cases and consequently had observed and possessed marijuana. While returning the driver's license, Buckman noticed two or three plastic garbage bags lying on the back seat and the floor. Defendant contended they contained dirty clothes and denied Buckman's request to search. While the deputy returned to the courthouse to obtain a search warrant, the defendant drove his vehicle to the court-house followed by two highway patrolmen. Buckman obtained the search warrant. He asked defendant if he wanted to go with him back to the car for the search. Defendant said: "You know what is in there. Go ahead, I don't want to go."

Buckman took County Clerk Don Rhodes and County Collector Leroy Adams to serve as witnesses as he searched the car. He took from the car three plastic bags of wet, plant-like material containing stems and leaves which Buckman believed to be marijuana, a pair of army issue rain pants, and a pair of wet and muddy yellow pruning shears. These items were taken to the county evidence room. Buckman counted the stalks finding the total to be twenty-four. The total weight including the bags was forty-seven pounds. Later that day, Buckman returned to the spot where Rufener had observed defendant's parked auto. He found fresh tire tracks and footprints in the mud which had the same tread as defendant's boots. The tracks led to a patch where Buckman found twenty-four cut stalks of what he believed to be marijuana. The plants had been cut about an inch to an inch and one half from the ground.

The next day Buckman noticed that the plants from the bags had started to mold and mildew so he took them to his home, locked them in his machine shed, and hung them up to dry. Three days later he returned them to the evidence room.

About a month later three more bags from another marijuana case were placed in the evidence room. The marijuana plants in these bags had not been cut, rather, they had roots still attached.

Sometime in November, the evidence room was broken into and all the bags were taken. A dribble of roots, stems, and plants was found extending from the evidence room to the street. The material in the sheriff's room was swept up, put in a bag, and marked. This bag was taken to North-east Missouri State University where Dr. Matt Eichtor Director of Law Enforcement Laboratories, tested it using three different test procedures. Under each procedure he

identified the material as marijuana. The bag and its contents were admitted into evidence as Exhibit 5 even though it was impossible to identify the material on the floor as being from the bags in which the defendant's marijuana was placed.

During the process of removal of the bags from defendant's automobile, County Collector Adams took two leaves of the plant material and placed them in a tray in his office. This material remained there until a week before the trial when it was placed in a bag and taken to Dr. Eichtor for examination. Adams, his two deputies, and the janitor had access to the office. Adams knew of no one else who had access. Dr. Eichtor testified that he ran three tests on these two leaves and that each showed positive results for marijuana. This material was admitted into evidence as Exhibit 4.

Sheriff Gene Dodd had considerable knowledge of marijuana and believed the patches he had seen in the field contained marijuana. He had seen the material in both the Roper and the Ratcliff bags, and testified that each contained marijuana.

On appeal defendant contends the court erred in admitting into evidence State's Exhibits 4 and 5 because the State failed to prove proper chains of custody. Defendant claims that without these two wrongfully admitted exhibits the State failed to make a submissible case.

■ The reasonable establishment of a chain of custody and the relevancy of an exhibit are matters for the trial court to decide. The State need not show who possessed the evidence at all times. The evidence is sufficient if it shows a reasonable assurance that it was the same and in the same condition. *State v. Turner*, 543 S.W.2d 270, 272–73 (Mo.App.1976). We believe the State satisfied the proof requirements of a proper chain of custody as to Exhibit 4, which was in the custody of the collector. We know of no requirement that an exhibit be in the sole custody of a police officer. Any weakness in the State's case as to this exhibit goes to the weight to be given this exhibit. Unlike the objection to

Exhibit 4, we conclude defendant's objection to the admission of Exhibit 5 has merit. The evidence was not sufficient to show that the material found on the floor of the Sheriff's office was that taken from the defendant. Therefore, the court erred in the admission of the exhibit.

However, even excluding Exhibit 5 and the testimony of Dr. Eichtor relating thereto, we believe the State made a submissible case against the defendant on the charge of possession of more than thirty-five grams of marijuana. The State was required to prove: 1) that defendant had possession of marijuana, 2) that the marijuana weighed in excess of thirty-five grams, and 3) that defendant was aware of the character of the drug and intentionally had it in his possession.

■ The crucial issue in this case relates to the proof that the plants found in defendant's car were marijuana. Dr. Eichtor's expert testimony that in his opinion Exhibit 4 was marijuana supplies proof that defendant possessed marijuana. Furthermore, although we find no Missouri cases so holding, we believe that officers who have had considerable experience in investigating marijuana cases can testify that in their opinion a certain substance is marijuana. Such testimony is sufficient, in the absence of a chemical analysis by an expert, to make a submissible case on this issue. The Ohio Supreme Court reached this result in *State v. Maupin*, 42 Ohio St.2d 473, 330 N.E.2d 708 (1975). In *Maupin*, the court quoted approvingly from 23 C.J.S. Criminal Law § 864:

Marijuana, not being an extract or preparation difficult or impossible to characterize without chemical analysis, but consisting of the dried leaves, stems, and seeds of a plant which anyone reasonably familiar therewith should be able to identify by appearance, it is not error to permit officers who have had experience in searching for and obtaining marijuana to testify that a certain substance is marijuana; . . . .

330 N.E.2d at 713. *Accord, Cory v. State,* 543 P.2d 565 (Okl.Cr.1975); *Miller v. State,* 168 Tex.Cr.App. 570, 330 S.W.2d 466 (1959).

Both Sheriff Dodd and Deputy Buckman testified as to their considerable experience with marijuana cases and their knowledge of marijuana's appearance and smell. Dodd testified that the contents of the bags found in defendant's car were marijuana. Deputy Sheriff Buckman testified that the contents appeared to be marijuana. Defendant made no objection at trial as to their qualifications·or opinions, nor does he here challenge their qualifications or opinions. We find substantial evidence in the record that the bags in defendant's car contained marijuana.

�In Defendant does not challenge the proof of the other elements of the offense. The evidence was sufficient for the jury to infer that the defendant was aware of the character of the drug and intentionally and knowingly had in his possession. Likewise, Deputy Buckman's testimony that when he weighed the plants and bags they weighed forty-seven pounds was sufficient to prove that the defendant possessed marijuana in excess of thirty-five grams.

▄ Under this point, without citation or authority, the defendant states: "that the state failed to prove the charge alleged against defendant because of the state's total failure to produce at any time, the alleged evidence seized." The corpus delicti can be proven by circumstantial evidence. Only the best proof that is presently obtainable need be shown in order to establish the corpus delicti. *State v. Brooks,* 551 S.W.2d 634, 646 n. 18 (Mo.App.1977). *See People v. Candalaria,* 121 Cal.App.2d 686, 264 P.2d 71 (1953) (wherein the corpus delicti of the offense of sale of heroin to a minor was proven by circumstantial evidence; the heroin was not available ·at trial). Clearly, the State here made a submissible case against defendant.

We must now consider the effect of the erroneous admission of exhibit 5. This being a court-tried case, we conclude that the improper admission was harmless. Judge McMillian, speaking for our court in *State v. Whaley,* 512 S.W.2d 431 (Mo.App.1974) said:

> [w]e hold that the court improperly permitted Deputy Irvin Ferguson to give expert opinion testimony as to the uniqueness of the diamond wedding rings. But, in our view, the error was harmless. First, because this was a court tried case and the same strictness as to the admission of evidence is not applied as in cases tried before a jury, *United States Fidelity & Guaranty Co. v. Goodson,* 227 Mo.App. 456, 54 S.W.2d 754 (1933) and *Johnson v. Johnson,* 240 S.W.2d 184 (Mo.App.1951). Since the rules of exclusion in law of evidence as applied in a court of law are largely as a result of the jury system, the purpose of which is to keep from the jury all irrelevant and collateral matters which might tend to confuse them or mislead them from a consideration of the real question involved, when an action is to the court sitting without a jury, the rules of exclusion are less strictly enforced, *Laumeier v. Gehner,* 110 Mo. 122, 19 S.W. 82 (1892) and *Nevil v. Wahl,* 228 Mo.App. 49, 65 S.W.2d 123 (1933), the assumption being that the court will not be confused or misled by what is irrelevant and inclusive.

*Id.* at 435.

Judgment affirmed.

WEIER, C. J., and GUNN, J., concur.