**STATE of Missouri, Respondent,**

v.

**Bruce W. MURRAY, Appellant.**

**No. 63216.**

Supreme Court of Missouri,
En Banc.

April 6, 1982.

James G. Gregory and John Edward Cash, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Madeleine O. Birmingham, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

Convicted on two counts of second degree burglary and sentenced to concurrent prison terms of three and five years respectively, defendant appeals. We consider the cause, transferred here from the Missouri Court of Appeals, Western District after opinion, as though on original appeal. Art. V, § 10, Mo.Const.

The Summit Realty Company owns the Summit Plaza, a "strip" shopping center in Holts Summit, Missouri, with a large parking area flanked by long one-story buildings on the west and north, each housing a row of stores separated by partition walls.

These buildings are arranged in an "L" pattern, one lying on a north-south axis (hereafter the west building) and the other, referred to as the north building, running east at a right angle from the northern end of the west building. The vertex of the "L" is near the northwest corner of the Plaza and at their closest points the buildings are no more than 60 feet apart.

The stores of the west building face east toward the main parking lot while those in the north building face south with their back or north entrances opening on a driveway. All available spaces of the west building had been leased, but only four of the six available stalls in the north building were rented on January 27, 1979. A unit near the middle of that building was occupied by the Eilers Drug Store and the adjacent store space to the west was one of those available for leasing.

Among a number of persons at the "Plaza" during the late night of January 26th and early morning of January 27th, 1979, was a young man who discovered his parked truck had been broken into and a radio stolen. The police were called to the scene to investigate that incident and upon their arrival, the burglar alarm in Eilers Drug Store sounded. An employee of the movie theater located on the east end of the north building ran from the theater to the back of the building in time to see two persons, apparently male dressed in dark clothing, run from the back of one of the stores and up an embankment a short distance to the north. Several of the persons in the parking lot, including the police, also saw the two men as they ran west along the embankment, and immediately took chase on foot. A short time later the police apprehended two men dressed in dark clothing, one of whom was appellant, lying face-down in a ditch west of the Plaza. Footprints in the snow of two persons were traced from the north building, west toward a lagoon not far from where appellant was arrested. An examination of Eilers Drug

Store and the adjacent unleased storeroom revealed that the empty store had been entered by breaking the lock of its rear door and access to Eilers Drug Store attained by knocking a hole approximately 2 feet in diameter through the plasterboard wall separating the stores. The burglar alarm, which attracted so much attention, had been activated when the drug store was entered, and footprints discovered inside the store matched inkblots taken from appellant's shoe soles. Also, a chemical analysis of a wallboard sample taken from the breached wall compared with that of a powdery substance found on appellant's jacket, disclosed the substances had "very similar properties."

Appellant was charged and convicted in Count I of burglarizing the empty store by unlawfully entering for the purpose of committing property damage "in the third degree therein" and in Count II with burglarizing Eilers Drug Store by unlawfully entering for the purpose of "stealing therein."

I.

This was a circumstantial evidence case from which reasonable inferences were available to support submission of several theories of guilt including appellant's role as an active participant or as an aider in a manner less than an active participant. In this connection a definitional instruction, MAI–CR2d 2.10, was given but the verdict directors were not in the form of MAI–CR2d 2.12 as required by Note on Use 3 to MAI–CR2d 2.10 in instances when 2.10 is given. Instead, the verdict director selected for submission of each Count, was MAI–CR2d 23.52.[1] Appellant asserts this utilization of MAI–CR2d 23.52, instead of 2.12, was error under Rule 28.02(e) and urges we deem it prejudicial.

Assuming that error occurred, though we do not decide the point, trial error carries a presumption of prejudice that may be rebutted by the facts and circumstances of a particular case, *State v.*

1. Similar instructions appropriate to each count were given for the lesser included offenses.

*Walker*, 484 S.W.2d 284 (Mo.1972); *State v. Howard*, 601 S.W.2d 308 (Mo.App.1980), and its prejudicial effect is to be judicially determined, *State v. Boyington*, 544 S.W.2d 300 (Mo.App.1976). This principle is applicable to instances of erroneous jury instructions. *Simms v. State*, 568 S.W.2d 801 (Mo. App.1978).

■ MAI–CR2d 2.12, which appellant insists should have been submitted in lieu of those given as the verdict directors for each count, would have allowed the jury to convict appellant if he aided in the crime as an active participant or in a manner less than an active participant and, as noted above, the evidence supported submission of either or both theories of guilt. On the other hand, giving of MAI–CR2d 23.52 permitted the jury to convict appellant only as an active participant. By narrowing the bases for conviction, the giving of MAI–CR2d 23.-52 operated to his advantage, not his prejudice and at most was harmless error, Rule 29.12(a), and not a ground for reversal. *State v. Lowery*, 565 S.W.2d 680 (Mo.App. 1978). *See also, State v. McIlvoy*, 629 S.W.2d 333 (Mo. banc 1982).

## II.

■ Appellant next challenges the sufficiency of the evidence as to Count I, claiming that the unleased stall was not shown to be an *inhabitable* structure within the terms of § 569.010(2) and § 569.170, RSMo 1978; further, it was not proved appellant intended to commit "property damage in the third degree" *inside* the unleased stall because the wall he breached was part of Eilers Drug Store, not a part of the vacant stall.

Inhabitable structure as defined in the Criminal Code, § 569.010(2), RSMo 1978, includes

a ship, trailer, sleeping car, airplane, or other vehicle or *structure*:

(a) *Where any person* lives or *carries on business or other calling* ; . . .

Any such vehicle or structure is "inhabitable" regardless of whether a person is actually present; Section 569.010(2), RSMo 1978. (Emphasis added)

Accordingly, a "structure" in which a business is "carrie[d] on" is an inhabitable structure within the meaning of the statute. The vacant stall, complete with walls, roof and floor most certainly was a structure. It was separated from the stores on either side by partition walls and its doors were closed and locked. The only question is whether Summit Realty Company as the owner/lessor, was "carr[ying] on" a "business or other calling" within the leased stall in a manner satisfying § 569.010(2)(a). As owner of the building in which both the unleased stall and Eilers Drug Store were located, the company was engaged in the business of leasing the stalls to prospective tenants and would be expected to show such prospects available properties. The burglarized stall was locked and it may reasonably be inferred that this was to keep it secure and in condition to be displayed for leasing purposes at any time. Consistent with this inference is the fact that after the burglary, the unit was let for use as a restaurant. Summit Realty was in the business of leasing its properties, and could be said to be carrying on that business at least to some extent within the stall itself.

■ Appellant also asserts that the common wall separating the vacant stall and the drug store belonged to the drug store property. This stems from the testimony of the drug store proprietor Bruce Eilers, who, when examining a photograph (State's Ex. No. 9) depicting the interior of his store and the damaged wall, was asked to whom the wall belonged. He replied it was his. From this, appellant argues the breach of the wall did not damage property inside the vacant stall and could not serve as a basis for the charge of property damage "therein". This argument is not well taken. The referenced photograph shows the common wall between the stores, as seen facing west inside Eilers' Store. When read in context, Eilers' remark refers to that part of the wall facing the drug store and does not establish that Eilers, as a tenant, owned or had exclusive control of *both* sides of the partition wall. The ques-

tion of who owned the common wall, in the absence of an agreement otherwise, may be resolved by reference to general legal principles governing party walls. As of January 27th, 1979, Summit Realty had conveyed a leasehold interest in the stall on the east side of the wall to Eilers but retained full title to the stall on the west. Where the owner of a structure divided by a common wall conveys an interest in one part so divided, but retains title to the other, each party may claim an interest to one-half of the common wall and an easement for support in the other half. 69 C.J.S. *Party Walls* § 10 (1951); *see, Reinhardt v. Holmes*, 143 Mo.App. 212, 127 S.W. 611 (1910). Thus, absent a contrary agreement, Summit and Eilers each had an interest in its half of the common wall and an easement for support in the other. When appellant broke through the wall to reach Eilers Drug Store, he did in fact damage the property of Summit Realty, an element of the crime of property damage in the third degree. If we assume, as appellant argues, that Eilers owned the entire wall the breach would nevertheless cause economic loss and property damage to both stalls, for the value of each would be diminished. Hence, on a party wall or economic loss theory, by knocking the hole appellant committed property damage in the third degree with respect to the unleased property.

### III.

For his third claim of error appellant asserts that testimony of chemist Carl Rothove, as to tests he conducted on the powdery substances found on the burglars' jackets [2] and a plasterboard sample taken from the damaged wall, was improperly admitted in evidence, because the chain of custody of the jackets and wallboard sample was not sufficiently established to support their admission and further, the results of Rothove's tests were equivocal and void of probative value.

The sufficiency of evidence establishing a chain of custody is a matter addressed to the sound discretion of the trial court, *State v. Roper*, 591 S.W.2d 58 (Mo.App.1979), with a purpose of demonstrating there has been no improper tampering with the exhibit. *State v. Taylor*, 486 S.W.2d 239 (Mo.1972). In *State v. McCrary*, 478 S.W.2d 349 (Mo. 1972), the testimony showed that a police officer removed the evidence from defendant, took it to the police department laboratory where it was subsequently removed from a locker by the lab chemist in accordance with the regular laboratory procedure, and the police officer identified the evidence at trial. From this it was held the chain of custody was sufficiently established to support its admission in evidence. As to the admission of the jackets in the case at bar, the holding in *McCrary* is controlling, for the dispositive facts demonstrating the chain of control are essentially the same in each case. In addition, a police officer testified here that the jackets had a powdery substance when removed from the suspects, one of whom was appellant, providing further identification that the jackets which Rothove tested were those removed from the men apprehended that night. Exhibits 13 and 14 (the jackets) were properly admitted in evidence.

The testimony concerning chain of custody of the wallboard sample differs from *McCrary* in that here, the officer who first took custody of the evidence could not positively identify it as the same at the trial. However, in *State v. Hebb*, 595 S.W.2d 47 (Mo.App.1980), a chain of custody was held properly established where a blood sample was taken by a technician from a vial deposited in the laboratory and subsequently tested by the laboratory's criminologist. *Hebb* does not mention whether the technician was able to identify the blood sample at trial, implying that such testimony was not indispensable in establishing the chain of custody. Moreover, the fact the wallboard traveled the same custodial path as the jackets and the Highway Patrol laboratory's regular procedures were apparently followed for each provided reasonable assurance that the evidence tested was the

2. The jackets of both suspects were seized and introduced as exhibits during trial.

evidence gathered at or near the scene and time of the crime. A sufficient basis was established for introduction of the exhibits notwithstanding the challenge made here. *See, State v. Roper*, 591 S.W.2d 58 (Mo.App. 1979).

Appellant's argument as to Rothove's testimony, that the powdery substance found on appellant's jacket and the wallboard sample had "very similar properties", was so inconclusive as to be without probative value, is an attack on the relevancy of that testimony, the resolution of which is addressed to the sound discretion of the trial court, not to be disturbed unless an abuse thereof is shown. *State v. Wood*, 596 S.W.2d 394 (Mo. banc 1980), *cert. denied* 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98; *State v. Wickizer*, 583 S.W.2d 519 (Mo. banc 1979); *State v. Brown*, 604 S.W.2d 10 (Mo. App.1980); *State v. Miller*, 593 S.W.2d 895 (Mo.App.1980); *State v. Newman*, 579 S.W.2d 678 (Mo.App.1979). This applies to the testimony of one who qualifies as an expert, such as witness Rothove. *State v. Curtis*, 573 S.W.2d 416 (Mo.App.1978). We find no abuse of discretion. The question remaining was, what weight should be accorded the testimony, and that was a matter for the jury's determination.

### IV.

Finally, appellant claims his two convictions for second degree burglary constitute a violation of double jeopardy proscriptions of the Fifth and Fourteenth Amendments to the U.S. Constitution, because evidence of the *breach* of the partition wall was used to prove a statutory element of the burglary charge of Count I (property damage in the third degree in the vacant stall), and a statutory element of Count II, (the unlawful entry of Eilers Drug Store). This contention is denied for several reasons. These separate crimes consist of several statutory elements, but the overlapping proof singled out by appellant applies only to one element of each crime and moreover to only one feature of such element. As to Count I, the statutory ele-ment targeted by appellant consists of two parts: (a) property damage (b) committed *in* the Summit Realty premises. The proof of breaking goes to the former, but other proof discussed in Part II of this opinion is required for the latter. Similarly as to Count II the statutory element involved consists of two parts: (a) unlawful entry (b) into Eilers premises. The proof of breaking goes to the former, and other proof is required for the latter. Hence, as to these discreet dual-faceted statutory elements of these separate crimes, the item of proof in question is common only to a *part* of one element of each and constitutes no basis for a double jeopardy claim. Application of the *Blockburger* test[3] focuses on *all* of the *statutory elements* of each offense. If each crime requires proof of a fact that the other does not, the test is satisfied, notwithstanding substantial overlap in the evidence offered to establish the crimes. *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). Here, there were entirely separate crimes committed serially in different locations harming unrelated victims. Neither crime had statutory elements in common with the other, and the contention fails the test enunciated in *Sours v. State*, 593 S.W.2d 208 (Mo. banc 1980), *Sours v. State*, 603 S.W.2d 592 (Mo. banc 1980), and *State v. Haggard*, 619 S.W.2d 44 (Mo. banc 1981). Quite simply there was no overlapping of the statutory elements and a minimal coincidence of proof. The contention is without merit.

Affirmed.

All concur.

---

**3.** *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).