**STATE of Missouri, Respondent,**

v.

**Robert BRANSCOMB, Appellant.**

**No. 44074.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 17, 1982.

Joseph W. Downey, Public Defender, John Putzel, Asst. Public Defender, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for respondent.

CRANDALL, Presiding Judge.

Appellant was convicted, in a jury-tried case, of assault in the first degree, § 565.-050, RSMo 1978, and was sentenced to ten years imprisonment. This appeal ensues. We affirm.

■ Appellant, in his first of four points, challenges the sufficiency of the evidence. In testing the sufficiency of the evidence, facts and appropriate inferences intelligently drawn therefrom must be assessed in the light most favorable to the State, disregarding all adverse inferences and evidence. *State v. Means,* 628 S.W.2d 426, 427 (Mo. App.1982). Our review is limited to whether the evidence is sufficient to make a submissible case and whether there is sufficient evidence from which reasonable persons could have found appellant guilty. *Means,* 628 S.W.2d at 427–428.

■ Viewed by that standard we now turn to the pertinent facts. On May 15, 1980, Samuel Whiteside drove to Scullin Steel Company to pick up his dirty work clothes. Whiteside was employed by Scullin Steel as a welder and also served as a union shop steward. Upon arrival, Whiteside was approached by appellant and Louise Washington who were also employees of Scullin Steel. Appellant confronted Whiteside about an earlier altercation between Ms. Washington and Mr. Whiteside. Whiteside denied the altercation and turned to leave. At that time Whiteside was shot twice in the back. Another employee, Riley Williams, testified that he saw appellant shoot Whiteside. Further testimony revealed that after Whiteside turned his back to appellant, but before he was shot, Ms. Washington profanely encouraged appellant to kill Whiteside. After reviewing the record, we find that the State made a submissible case. There was direct evidence by an eyewitness that appellant shot the victim. The credibility of the witnesses was a question for the jury. Appellant's first contention is without merit.

Appellant next contends that the trial court erred in admitting into evidence the bloody shirt and jacket with bullet holes worn by the victim at the time of the assault, after appellant's attorney had made a judicial admission that Whiteside had been shot twice in the back.

■ The admission of demonstrative evidence is a matter that rests primarily within the discretion of the trial court. *State v. Sanders,* 619 S.W.2d 344, 349 (Mo. App.1981). Such evidence is generally held admissible when the probative value of the evidence outweighs its possible inflammatory effect. *State v. Garrett,* 595 S.W.2d 422, 430 (Mo.App.1980). In this case the holes in the back of the shirt and jacket corroborated the testimony of the victim and the eyewitnesses and aided the jury in determining the location of the wounds. Since the State has the burden of proving appellant's guilt beyond a reasonable doubt, it should not be unduly limited in the quantum of its proof. *State v. Ward,* 569 S.W.2d 341, 345 (Mo.App.1978). Appellant's second contention is without merit.

Appellant's third contention is that the trial court improperly admitted into evidence a bullet removed from the victim without establishing a proper chain of custody. Again, the admission of such demonstrative evidence is largely within the sound discretion of the trial judge. *State v. Murray,* 630 S.W.2d 577, 581 (Mo. banc 1982).

After being admitted to Deaconess Hospital, Mr. Whiteside was treated by Dr. Robert Rainey. Dr. Rainey was only able to remove one bullet due to the positioning of the second bullet in Mr. Whiteside's neck. The operating room head nurse gave the bullet to police officer Michael Venker, who delivered it to the department laboratory. At trial, Dr. Rainey testified that the bullet admitted into evidence was "compatible" with the bullet he removed.

 In establishing a chain of custody there is no requirement to account for the hand-to-hand custody of the evidence between the time it is obtained and the time it is admitted to trial. *State v. Payne,* 612 S.W.2d 353, 356 (Mo.App.1980). The evidence is sufficient if it shows a reasonable assurance that it was the same and in the same condition. *State v. Roper,* 591 S.W.2d 58, 61 (Mo.App.1979). We are reasonably assured that the bullet introduced into evidence was actually taken from the victim. The trial court did not abuse its discretion, particularly in view of appellant's judicial admission that the victim had been shot twice in the back.

Appellant's final contention is that the trial court improperly coerced the jury into reaching its verdict by giving MAI–CR2d 1.10, the so-called "hammer" instruction.[1]

The jury had been deliberating for approximately four hours when it sent the following question to the Court: "Your Honor, the jury feels as a whole that we are at an impasse. What shall we do?" The court then read MAI–CR2d 1.10 to the jury and thirty-five minutes later the jury returned with a guilty verdict.

The determination to give MAI–CR2d 1.10 rests in the sound discretion of the trial court. *State v. Bradford,* 627 S.W.2d 281, 283 (Mo.1982); *State v. Broadux,* 618 S.W.2d 649, 651 (Mo. banc 1981). The giving of the "hammer" instruction is an abuse of the trial court's discretion only when it is demonstrably coercive. *State v. Thurber,* 625 S.W.2d 931, 934 (Mo.App.1981). In this case, the "hammer" instruction was given only after the jury requested further guidance following four hours of deliberation. We find no indication of coercion.

The judgment of the trial court is affirmed.

SNYDER and CRIST, JJ., concur.

---

1. Instruction No. 11 reads as follows:

   It is desirable that there be a verdict in every case. The trial of a lawsuit involves considerable time and effort, and the parties are entitled to have their rights determined once and for all in every case. The twelve jurors chosen to try this case should be as well qualified to do so as any other twelve that might hereafter be chosen. Open and frank discussion by you in your jury room of the evidence in this case may aid you in agreeing upon the facts; however, no juror should ever agree to a verdict that violates the instructions of the Court, nor find as a fact that which under the evidence and his conscience he believes to be untrue. Yet each of you should respect the opinions of your fellow jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement upon a verdict.