STATE of Missouri,
Plaintiff-Respondent,

v.

Danny S. JIMMERSON, a/k/a Danny
Price, Defendant-Appellant.

No. 13120.

Missouri Court of Appeals,
Southern District,
Division Three.

Nov. 3, 1983.

John D. Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

David M. Strauss, Public Defender, Larry M. Schumaker (appearing under Supreme Court Rule 13), Columbia, for defendant-appellant.

PREWITT, Judge.

Defendant was convicted of capital murder, § 565.001, RSMo 1978, and sentenced to life imprisonment as provided in § 565.-008.1, RSMo 1978. Prior to trial the state announced it would not seek the death penalty.

Defendant was charged with killing a clerk of a store in Sikeston following a robbery. The clerk was taken from the store by two black men and shot near a country road. No challenge is made as to the sufficiency of the evidence so we do not detail it further.

Defendant's first point contends that the trial court erred in denying his motion for individual voir dire of the prospective jurors out of the hearing of the others. He contends that due process under the fourteenth amendment to the United States Constitution requires individual voir dire upon the timely request of a defendant in a capital murder case because the defendant's interest clearly outweighs that of the state. He does not contend that individual examination of prospective jurors must be granted in all criminal trials, but only when a defendant is charged with capital murder. He claims that here there was prejudicial pretrial publicity and the possibility of racial bias by jurors against the defendant who is black. He contends that collective voir dire in a capital murder case "poses an unjustifiable risk that disclosure of pretrial publicity may affect a previously untainted juror and that the racial prejudices of some prospective jurors may be aroused yet concealed."

Citing *State v. Olinghouse,* 605 S.W.2d 58 (Mo. banc 1980), and *State v. Williams,* 630 S.W.2d 117 (Mo.App.1981), defendant asserts that requiring a showing of prejudice due to the trial court's handling of the voir dire is a "retrospective approach" that "cannot satisfy the mandate of the Fourteenth Amendment in capital murder cases". Stating that "the issue is one of first impression", defendant cites no authority specifically in support of his contention. The state also cites no specific controlling authority and we find none.

In a prosecution for stealing, rape, sodomy and kidnapping, the denial of a request by the defense for individual voir dire was held not to be an abuse of the trial court's discretion. *State v. Williams,* supra, 630 S.W.2d at 119. In *State v. Yowell,* 513 S.W.2d 397, 403 (Mo. banc 1974), the court held that denying defendant's request to examine prospective jurors in groups of six to twelve was not error. The defendant was charged with rape.

Refusing defense counsel's request to question each member of the jury panel out of the hearing of the other panel members has been held not to be error in murder prosecutions in other jurisdictions. See *State v. Greenawalt,* 128 Ariz. 150, 624 P.2d 828, 839–840 (1981), cert. denied, 454 U.S. 882, 102 S.Ct. 364, 70 L.Ed.2d 191 (1981) (death sentence); *Stone v. State,* 378 So.2d 765, 768 (Fla.1979), cert. denied, 449 U.S. 986, 101 S.Ct. 407, 66 L.Ed.2d 250 (1980) (death sentence); *Messer v. State,* 247 Ga. 316, 276 S.E.2d 15, 21–22 (1981), cert. denied, 454 U.S. 882, 102 S.Ct. 367, 70 L.Ed.2d 193 (1981) (death sentence); *State v. Sunday,* 609 P.2d 1188, 1192 (Mont.1980) (sentence of 100 years each on two counts of deliberate homicide).

The trial court announced prior to the start of the trial that the voir dire examination would be handled by swearing "the 50 or 52 jurors who show up," and reading them MAI–CR 2d 1.02. Then the trial

judge said he would question them in generalized areas. The jury would then be divided into three groups of approximately 18 per group and counsel for each side would be allowed to proceed to question them "as you would any other panel." The voir dire examination is not in the record so we do not know what, if any, effect any pretrial publicity had on the prospective jurors, or if any racial prejudice may have been revealed during voir dire. There is no showing in the record that it was necessary to reveal any prejudicial material in voir dire nor that any prejudice to defendant existed.

■ We are not convinced that individual voir dire must be allowed in all capital murder cases. Absent some indication that prejudice likely occurred, we cannot say the trial court abused its discretion. There may be situations where the circumstances would require separation during voir dire in order for defendant to have a fair trial, but there were no such circumstances shown here and no prejudice was shown in the manner that the voir dire was conducted. We cannot conclude that prejudice to defendant was likely. This point is denied.

■ Defendant asserts in his next three points that the trial court committed error in refusing to give the first-degree murder instruction he tendered. The offense charged occurred on May 23, 1982, and defendant was tried on December 15 and 16, 1982. Therefore, we start with the premise that the holding of *State v. Baker*, 636 S.W.2d 902, 904–905 (Mo. banc 1982), controls and that first-degree murder is not a lesser included offense of capital murder and failing to give a first-degree murder instruction was not erroneous. See also *State v. Williams*, 652 S.W.2d 102, 112 (Mo. banc 1983). With this in mind we consider whether the circumstances claimed by defendant in his second, third and fourth points change this result and make failure to submit the instruction erroneous.

Defendant contends in his second point that this refusal denied him equal protection of the laws guaranteed by the fourteenth amendment to the United States Constitution because (A) defendant's alleged coconspirator was similarly circumstanced, yet was allowed to plead guilty to first-degree murder; (B) the prosecutor and the defendant were similarly circumstanced with respect to the submission of jury instruction, yet the defendant's instruction of first-degree murder was refused while the prosecutor's submission of a first-degree murder instruction would have been allowed; and (C) "that the Missouri Supreme Court's disparate treatment of prosecutors and defendants constitutes a denial of his fundamental right of access to the courts."

This point has no merit. Defendant and his alleged coconspirator and defendant and the prosecuting attorney were not as defendant alleges "similarly circumstanced". The coconspirator plead guilty and defendant was tried. The state was prosecuting defendant and as it did not request a first-degree murder instruction, whether it might have been entitled to it we need not decide.

■ In argument under subpoint C of his second point defendant states that he was denied his fundamental right of access to the courts because "the only ascertainable rule of law in Missouri is that criminal convictions will be affirmed, regardless of the illogic or contradictions inherent in the appellate court's opinion." He relies upon the dissent of Judge Welliver in *State v. Goddard*, 649 S.W.2d 882 (Mo. banc 1983). Defendant's argument goes much further than we interpret Judge Welliver's statements, but even if not, we are bound by the majority holding of the supreme court in such cases as *Baker* and *Williams* and cannot say that the court's holdings are denying defendants their right of access to the courts. Point two is denied.

For his third point defendant contends that the trial court committed constitutional error in refusing to instruct the jury on first-degree murder because (A) the refusal unduly burdened the defendant's fundamental right to trial by jury in that the alleged coconspirator was allowed to plead guilty to first-degree murder while the de-

fendant was denied the submission of first-degree murder instruction because he elected to exercise his right to trial by jury; and (B) that this refusal infringed defendant's right to fundamental fairness in criminal proceedings in that the submitted instructions failed to adequately test the jury's understanding of and conclusions from the evidence.

What occurred to the alleged co-conspirator due to his arrangement with the prosecutor is not relevant to whether a first-degree murder instruction was proper here. Had he plead guilty to only robbery, that would not have entitled defendant to such an instruction when there was no such charge against defendant. We do not understand how defendant's argument portion of his brief supports his contention under Point III(B). However, his contention, at least as stated in his "Points Relied On", is disposed of by noting that it is second-degree murder, not first-degree murder which would sufficiently test the jury's belief of the crucial facts for conviction of capital murder. *State v. Baker,* supra, 636 S.W.2d at 905. Second-degree murder was submitted here. Point three is denied.

Defendant's fourth point contends the trial court erred in refusing to give the first-degree murder instruction because defendant states that here first-degree murder was a lesser included offense of capital murder, in that the evidence submitted by the state was identical to the evidence that would have supported a first-degree murder instruction. That the evidence might have supported the instruction does not require the giving of it. For it to be required the offense must be a lesser included offense of that charged and first-degree murder was not. *State v. Baker,* supra, 636 S.W.2d at 905. Point four is denied.

Defendant's fifth point contends that the trial court erred in not instructing "the jury concerning criminal liability for the conduct of others in conjunction with a first degree murder instruction". Defendant asserts this infringed his right to fundamental fairness in criminal proceedings, because the submitted instructions failed to adequately test the jury's understanding of and conclusions from the evidence. He states that the trial court's "refusal to submit the requested instructions in tandem deprived the defendant of his fundamental right to a criminal proceeding which does not allow the jury to resolve its doubts in favor of conviction".

Defendant's counsel requested at the instructional conference that the trial court give "the accessory instructions", apparently referring to MAI–CR 2d 2.10 and 2.12. The trial court refused, stating that by not doing so a greater burden was put on the state as under the instructions given the state had to prove that defendant "pulled the trigger". Defendant acknowledges that in *State v. Murray,* 630 S.W.2d 577, 580 (Mo. banc 1982), the court held that, even if erroneous, the omission of MAI–CR 2d 2.12 operated to the defendant's advantage and he was not prejudiced by its omission. Defendant attempts to distinguish *Murray,* stating that here the defendant was entitled to have the jury consider that the accomplice did the shooting and if they so found he might have been found guilty only of first-degree murder.

The argument necessarily fails as if it was not proper for the court to give the first-degree murder instruction, as we have earlier stated, defendant was not entitled to a benefit he might have received by combining it with instructions referring to others. As we have also previously noted, the jurors' understanding of and conclusions from the evidence would be properly tested from the instructions given. Point five is denied.

In his final point defendant asserts that the trial court erred in not instructing the jury following MAI–CR 2d 2.10 and MAI–CR 2d 2.12 because in the absence of these instructions the jury had to focus on a choice between capital murder and second-degree murder without considering the relationship between defendant's actions and his mental state. He says the instructions given forced the jury to assume that the defendant was the principal actor in the

homicide in order to convict him, thereby diminishing the state's burden of establishing premeditation and deliberation.

Defendant bases these contentions on the evidence that the accomplice fired the fatal shots at the victim. There was also evidence that defendant fired the shots. He contends that the failure to submit these instructions removed from the jury's consideration whether defendant was the "principal actor". He asserts the failure to submit the instructions "acted as an endorsement of the prosecutor's and judge's belief that the defendant was the principal actor; since no instruction was submitted that indicated that the defendant may not have been the central figure in the homicide, the jury was invited to believe that the defendant had planned and orchestrated the entire incident." He asserts that this prevented the jury from finding that the accomplice was the one who fired the shot and such a finding might have affected the jury's view of defendant's premeditation and deliberation.

It is highly unlikely that any member of the jury would have known that MAI–CR 2d 2.10 and 2.12 were even available, so the failure to submit instructions following them would not indicate to them "an endorsement" of any kind. To assume that one or more jurors would notice their absence might presume more familiarity with MAI–CR 2d than that of many members of the bar or judiciary. The jury had the option of finding defendant guilty of second-degree murder or manslaughter and did not. The absence of MAI–CR 2d 2.10 and 2.12 put a greater burden on the state than there would have been had they been used and defendant's arguments do not persuade us otherwise. If we assume that error occurred, *Murray* is controlling, and there was no prejudice to defendant. This point is denied.

The judgment is affirmed.

GREENE, C.J., CROW, P.J., and FLANIGAN and MAUS, JJ., concur.