STATE of Missouri, Respondent,

v.

John David HOLMAN, Appellant.

No. 10458.

Missouri Court of Appeals,
Springfield District.

Sept. 22, 1977.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Stanley Robinson, Asst. Attys. Gen., Jefferson City, for respondent.

Robert W. Freeman, Greene, Cassity, Ferguson, Carnahan & Freeman, Springfield, for appellant.

Before BILLINGS, C. J., and STONE and TITUS, JJ.

TITUS, Judge.

Defendant was jury-convicted of first degree robbery and assault with intent to do great bodily harm without malice aforethought and sentenced to consecutive prison terms of five and two years. In our appellate review of this cause, we are committed to a consideration of the facts in evidence and the inferences that may be reasonably drawn therefrom in the light most favorable to the state. Evidence and inferences in conflict therewith will be disregarded. *State v. Zimpher,* 552 S.W.2d 345, 346[1] (Mo.App.1977). When so viewed, the record discloses the following.

The crimes occurred near 7 p.m. January 1, 1975, in a Springfield liquor store. Carl Johnson, the sole clerk on duty, was robbed by a male Negro at gunpoint. The Negro was wearing a gray knitted cap with only eye-slit openings which was pulled down "well over his chin, down around his shoulders." Johnson described the robber as five feet 10 or 11 inches tall, 160 to 170 pounds

and 19 to 21 years old.[1] Admitting to being "no gun expert", Johnson said the revolver used by the robber was "short-barreled, blue . . . a .38 [caliber], possibly." After robbing Johnson, the robber directed Johnson to walk up a ramp leading to the rear of the store; but before he could comply, the robber fired a bullet into the door of a walk-in cooler. Thereafter, as Johnson was ascending the ramp, another shot was fired and the bullet grazed Johnson's head. Fragments of the two fired bullets were recovered by the police.

On February 6, 1975, two Springfield reserve police officers investigated a report that a male Negro wearing green trousers and driving a white Cadillac with a certain license number had attempted to pass a stolen check. Also, via police radio, the two officers were advised of a recent armed robbery committed by a male Negro wearing a gray stocking cap mask. About 10:30 p.m. or one hour after receiving the radio report on the robbery, the officers saw a white Cadillac bearing the reported license number and occupied by two male Negroes. The officers followed the Cadillac and radioed for backup assistance. Just as the red lights on the police car were turned on, the Cadillac was stopped at a liquor store. The two occupants alighted and started to enter the store when they were halted by the officers. Defendant, who had been driving the Cadillac, was wearing green trousers and fit the physical description of the man who attempted to pass the check and the man who committed the armed robbery. Defendant and his passenger, Willie Skelton, were placed under arrest, handcuffed and "read their rights." Defendant told the officers that the Cadillac was not his property but had been borrowed. By looking through a window of the Cadillac, one of the officers saw a gray stocking cap of the type reportedly used in the recent armed robbery. After obtaining the stocking cap "with eyeholes cut in it", the officer found a .357 magnum revolver under the front seat on the passenger's side of the Cadillac.

At trial Johnson, the liquor store clerk, said the gray stocking cap was "similar to the mask" worn by the man who robbed him and that the revolver was "similar— looks like the gun that was used to [on?] me." A ballistic expert testified for the state that he had tested the revolver found in the Cadillac driven by defendant and the bullet fragments recovered at the liquor store. This witness was of the opinion that the bullet fragments had been fired from the revolver.

On February 10, 1975, two Springfield detectives were talking to defendant after he had been "advised of his constitutional rights pursuant to the *Miranda* Warning" when the subject of the liquor store robbery came up "in sort of a roundabout way." In substance, defendant told the detectives that he had been at the liquor store in a vehicle outside the store when the robbery occurred, that he did not participate in the robbery and that he would not tell the detectives the identity of the robber. Johnson, the robbed clerk, when confronted at trial with Willie Skelton, defendant's passenger in the white Cadillac on February 6, stated there was no way that Skelton could be the man that robbed him.

Over defendant's objections, the state introduced two letters into evidence. The first was written by an inmate of the Missouri State Penitentiary, William Kilgore, to defendant. The other was defendant's reply.

The inmate wrote:

"I saw James Bryan [sic] in H-Hall this morning and he said that you said i was going to testify against you and that i signed a statement against you. I don't know who's told you these things but whoever it is is a liar. I never signed nothing against you . . .. I don't know anything about the charge or charges they have on you . . .. You never told me anything about your

---

1. When defendant was booked into the Greene County jail on February 17, 1975, he told the booking sergeant his height was 5 feet 11 inches, that he weighed 165 pounds and was 20 years old.

charge or charges. And if i am called back to court this is exactly what i will tell them."

Defendant's reply reads:

"I got your scribes in the mail today. And was glad to hear that this statement down here that the D.A. is got is a false one. . . . I never thought that you were gonna come back to testify against me anyway. You see, when I went to try to get this dam gun and mask that they've got suppress, [the prosecutor] told the judge that you were coming back to testify to the fact that you over heard me braging about how I had shot the old man and how I was gonna get away with it, and then I said to myself, 'I know that that's a dam lie!' because I knew right then that you had told me once before that you wasn't a 'snitch' but [the prosecutor] went ahead and endorsed you as a state's witness anyway, so that's when I skin it to James Bryant and he didn't believe it either . . . we both had you figured as a confidential little guy . . . .. So once again . . ., I was glad to hear from ya, and as far as I am concern everything is still mellow between me and you, understand? So stay solid!"

Defendant raises four points on appeal. Generally his point regarding the sufficiency of the evidence to sustain the conviction would be considered initially. However, that point cannot be ascertained until a determination of the other points. If defendant's motion to suppress and objections to the opinion-testimony of the state's ballistic expert and the above letters should prove correct, we would doubt that the state adduced evidence sufficient to warrant a conviction.

■ One of defendant's points is that the trial court erred in permitting the opinion-testimony of the state's ballistic expert that the bullet fragments recovered at the liquor store had been fired from the revolver found in the white Cadillac driven by defendant because the chain of custody of the revolver, between its removal from the vehicle and its testing by the expert, had not been proved by the state.

■ The purpose and application of the chain of custody or possession rule is amply stated in *State v. Lemon,* 504 S.W.2d 676, 684[15, 16] (Mo.App.1973) and need not be repeated here. Trial testimony of the liquor store clerk that the revolver tested by the state's ballistic expert was "similar—looks like" the gun employed by the robber was sufficient to warrant its admission into evidence. *State v. Kern,* 447 S.W.2d 571, 574–575[3, 4] (Mo.1969); *State v. Johnson,* 286 S.W.2d 787, 791[3, 4] (Mo.1956). Identification of an exhibit need not be entirely unqualified—the weight to be given to the identification is for the jury. *State v. Stancliff,* 467 S.W.2d 26, 30[2] (Mo.1971). Moreover, when an exhibit itself is susceptible to positive identification in the singular sense, chain of custody becomes an irrelevant issue. *State v. Granberry,* 484 S.W.2d 295, 300–301[13–14] (Mo.banc 1972). The unobjected-to trial identification of the revolver-exhibit by the reserve officer as being the one he found in the Cadillac was sufficient [*State v. Alderman,* 498 S.W.2d 69, 72 (Mo.App.1973); *State v. Orr,* 493 S.W.2d 374, 377[11–12] (Mo.App.1973)], and when the state's ballistic expert, without objection, stated that he had used the revolver-exhibit in conducting his tests, the court did not err in admitting his opinion-testimony for the reason now advanced by defendant.

Another of defendant's points relates to the overruling of his motion to suppress as evidence the stocking cap and revolver found by the officers in the white Cadillac. The point states: "Said search and seizure was unlawful in that it was made without a warrant; without consent; not incidental to a valid arrest. The items taken were not in plain view and the arresting and searching officer had no probable cause to believe the occupants were involved in any criminal activity."

■ The Fourth Amendment's absolute admonition against unreasonable searches is not violated (a) by a search incident to a lawful arrest, (b) by seizure of items falling within the plain view doctrine, (c) by the

search of an automobile where probable cause exists to believe that it contains a substance which offends against the law, or (d) by protective searches by officers for weapons upon less than probable cause to arrest. *State v. Hall,* 508 S.W.2d 200, 202–203[1] (Mo.App.1974).

 At the time of the arrest on February 6, the officers were aware that recent felonies had been committed by a male Negro having a certain physical description. In the attempted passing of a stolen check, the man was reported to have been wearing green pants and driving a white Cadillac bearing a certain license number. In the armed robbery, the male Negro had been wearing a gray stocking cap as a mask. Therefore, when the officers saw the two male Negroes in a white Cadillac which bore the reported license and thereafter, subsequent to defendant's departure from the automobile, observed that defendant was wearing green trousers and fit the description of the man who attempted to pass the stolen check and who committed the armed robbery, the arrest of defendant without a warrant was lawful because the arresting officer then had reasonable grounds or probable cause to suspect that defendant had committed a felony. *State v. Henderson,* 510 S.W.2d 813, 818[2] (Mo. App.1974). In the course of defendant's arrest, the sighting in plain view of the gray stocking cap of the type said to have been used in the recent armed robbery gave the officers reasonable grounds to suppose that the automobile might contain contraband or a substance which offends against the law. "A reasonable belief or probable cause for believing that a felony has been committed and that an automobile contains that which by law is subject to seizure, will justify a search of an automobile and seizure incident to a lawful arrest, without a search warrant." *State v. Camper,* 353 S.W.2d 676, 680[7, 8] (Mo.1962). Under the related circumstances the search of the automobile and seizure of the revolver and stocking cap without a warrant or consent were not unreasonable but were based on probable cause as an incident to a lawful arrest. *State v. McCarthy,* 452 S.W.2d 211 (Mo.1970); *State v. Camper, supra,* 353 S.W.2d at 680. Moreover, reception into evidence of the stocking cap clearly exposed on the car floor and seen by the officer by a look through the window of the vehicle was proper. Discovery and recovery of the cap did not involve a search because it was in plain view. No search was needed to discover it. *State v. Rankin,* 477 S.W.2d 72, 75[4, 5] (Mo.1972). The fact that the officers additionally sought to justify the search of the Cadillac on grounds which may have been untenable, did not negative their right and duty to make the investigative search on the bases above noted. *State v. Eaton,* 504 S.W.2d 12, 19[13] (Mo.1973).

Defendant's point concerning the letter written by penitentiary inmate Kilgore to defendant and defendant's reply thereto, *supra,* has this factual background. Kilgore, a state's witness, testified on direct examination that he had first become acquainted with defendant and James Bryant when the three of them were cell mates in the Greene County jail in February 1975 and that he had talked to defendant and overheard defendant talking to others in the jail. However, the state did not ask Kilgore about and Kilgore did not testify to anything defendant may have said to him or anyone else. Kilgore identified the letter he had written to defendant and defendant's reply letter to him. When the state offered the two letters as exhibits, defendant's objection thereto (as it concerns this appeal) was: "I object to each of these . . . .. It is a form of character assassination of my client. This individual was called by the state and has stated under oath that no such statement was made. Therefore, the state is bound by that and cannot impeach its own witness." The objection was overruled.

On cross-examination Kilgore testified that defendant had never made any statement to him or to anyone else in his hearing about the liquor store robbery. Whereupon, defendant renewed "My objection on this and, in particular, [to defendant's letter to Kilgore] for the reason that by implication it would be an attempt for the state to

contradict and impeach its own witness." The objection was overruled.

Defendant's point relied on in this connection is that the trial court erred in admitting the letters into evidence for the reasons: "A. That the state's own witness . . . specifically testified that defendant never made any statement to him concerning the robbery and assault [at the liquor store] on January 1, 1975, nor did he overhear defendant make any such statement to any other person, and said exhibits were used to impeach Mr. Kilgore's testimony and imply in the minds of the jury that Mr. Kilgore was lying. B. That said exhibits were a form of character assassination of defendant when defendant's character was not in issue. C. That said exhibits, when taken cumulative, implied in the minds of the jury that certain incriminating statements had been made by defendant and as such was tantamount to testimony in the minds of the jury and since Mr. Kilgore denied that such statements were made and the exhibits could not be tested by cross-examination, defendant was denied his Sixth Amendment right of confrontation and cross-examination."

 As to subsection C of defendant's point: An assignment of error made in a motion for new trial and on appeal must be predicated upon an objection made in the trial of the case [*State v. Jones,* 515 S.W.2d 504, 506[3] (Mo.1974); *State v. Blankenship,* 536 S.W.2d 520, 521[5] (Mo.App.1976)], and if a defendant proposes to raise a question pertaining to the violation of a constitutional right, he must object to the introduction of the evidence which he construes to be in violation of that right and must clearly and specifically state the constitutional grounds for the objection. Otherwise, introduction of evidence in a supposed violation of such rights will not be a sufficient basis for an assignment of error in his motion for new trial or on appeal. *State v. Price,* 422 S.W.2d 286, 289[3] (Mo. 1967); *State v. Meiers,* 412 S.W.2d 478, 481[3] (Mo.1967); *State v. Graham,* 527 S.W.2d 936, 942[4] (Mo.App.1975). As defendant did not object to the exhibits on any constitutional grounds at trial, his complaints voiced in subsection C of the point are not for review.

 As to subsection B of the point: Rule 84.04(d), V.A.M.R., is made applicable to appeals involving criminal cases by Rule 28.18, V.A.M.R. *State v. Orr, supra,* 493 S.W.2d at 376. The point, i. e., "That said exhibits were a form of character assassination of defendant when defendant's character was not in issue," is a mere abstraction. Wherein and why the exhibits constituted character assassination is left to conjecture and guess. Furthermore, the point does not isolate and formulate a precise issue to be reviewed. *State v. Morrow,* 541 S.W.2d 738, 740[1] (Mo.App.1976). We have no duty to resort to the argument portion of defendant's brief to discover what "form of character assassination" defendant claims the exhibits took. The point is not preserved for review on appeal. *State v. Milentz,* 547 S.W.2d 164, 170[7] (Mo.App.1977); *State v. McClain,* 541 S.W.2d 351, 354[6, 7] (Mo.App.1976). Nevertheless, we note that if the state's evidence is otherwise competent, relevant and material, it affords no valid ground for objection that such evidence may incidentally tend to put defendant's character in issue. *Cochran v. United States,* 310 F.2d 585, 589[2] (8th Cir. 1962); *State v. Lorts,* 269 S.W.2d 88, 91–92[5] (Mo. 1954); 22A C.J.S. Criminal Law § 676, at p. 707.

 As to subsection A of the point: The primary thing wrong with defendant's assertion and his initial objection to the letters at trial, is that both are based on an assumed inaccuracy. At the time the letters were identified and received into evidence as exhibits, Kilgore had not been asked and had not testified as to what defendant had or had not told him or anyone else concerning the liquor store robbery. Therefore, the exhibits could not have then served to impeach Kilgore as a witness. It was not until cross-examination and in response to defendant's questioning that Kilgore stated he had not heard defendant say anything about the robbery and assault at the liquor store. If this

cross-examination testimony somehow served as impeachment, it was not prompted by the state and did not constitute an effort by the state to impeach its own witness.

■ Since the state apparently could not establish the authenticity and genuineness of defendant's letter through Kilgore's testimony, it was required to resort to the so-called reply letter doctrine to gain its entry into evidence. The doctrine is that a letter received in reply to one which has been proved to have been sent to the party is admissible. This is based on the presumption that a letter is delivered to the person to whom addressed, and that the reply to such letter was written by him or by his authority. *Crawford v. Metropolitan Life Ins. Co.,* 167 S.W.2d 915, 923[9] (Mo. App.1943); *United Factories v. Brigham,* 117 S.W.2d 662, 666[4] (Mo.App.1938), certiorari quashed *State ex rel. United Factories v. Hostetter,* 344 Mo. 386, 126 S.W.2d 1173 (1939); 32 C.J.S. Evidence § 706 b., pp. 982–983. Proof of the genuineness and authenticity of Kilgore's letter to defendant was required before defendant's reply would be admissible. But even were we to assume, arguendo, that one or both of the letter exhibits tended to impeach Kilgore as a witness, the rule is that where proof of a former contradictory statement is admissible as independent evidence, as, for example, where it might be shown as an admission against interest, the fact that such proof also tends to discredit or impeach the party's own witness does not require exclusion. *Dailey v. Grand Lodge, Brotherhood of R. Trainmen,* 311 Ill. 184, 142 N.E. 478, 479[1] (1924); 98 C.J.S. Witnesses § 578 k., at p. 549.

Finally for determination is defendant's asseveration that the evidence was not sufficient to sustain the conviction. In his point on this matter he avows that the state's case was wholly circumstantial and inconsistent, and the conviction cannot be sustained without stacking inferences upon inferences. Specifically, the inconsistencies averred by defendant are: "First, the state's own witness [Kilgore] testified that [defendant] never made an incriminating statement . . . but the court allowed the state to enter into evidence [defendant's letter to Kilgore] which implied that such a statement was made; and second, [the two detectives] testified that [defendant] told them he was [at the scene of the robbery and assault] but did not go in while it was the thrust of the state's case that [defendant] was the person that went in and robbed the store; and third, the state argued that the gun . . . and the cap . . . belonged to the defendant while the evidence disclosed that the gun was found 36 days after the robbery under the seat of another occupant in a car owned by another third person."

■ "It is well established that when a conviction is dependent upon circumstantial evidence and evidence of a defendant's agency in connection with the crime charged is entirely circumstantial, the facts and circumstances relied on by the state must not only be consistent with each other and with the hypothesis of defendant's guilt, but must also be inconsistent and irreconcilable with his innocence, and must point so clearly and satisfactorily to his guilt as to exclude every reasonable hypothesis of innocence. Mere suspicion of guilt, however great, is not sufficient to authorize a conviction of a crime." *State v. Gonzales,* 533 S.W.2d 268, 272[2–3] (Mo.App.1976). Nonetheless, "the prevailing circumstantial evidence rule, supra, is realistically tempered in its application since '[i]n a case involving circumstantial evidence the circumstances need not be absolutely conclusive of guil*ty,* and they need not demonstrate impossibility of innocence[;] . . . the mere existence of other possible hypothes*is* is not enough to remove the case from the jury.' " *State v. Franco,* 544 S.W.2d 533, 534–535[3] (Mo.banc 1976). The rule is likewise tempered with the repeatings that "the facts in evidence and all favorable inferences reasonably to be drawn therefrom must be considered in the light most favorable to the state and all evidence and inferences to the contrary must be disregarded." *State v. Franco, supra,* 544

S.W.2d at 534[1]. In addition to the foregoing, it must be remembered that the circumstantial evidence rule "is applicable only where the evidence of the defendant's agency in connection with the crime charged is entirely circumstantial. *State v. Allen,* 420 S.W.2d 330, 333[1] (Mo.1967); *State v. Stead,* 473 S.W.2d 714, 716[3, 4] (Mo.1971)." *State v. McClure,* 504 S.W.2d 664, 667[1] (Mo.App.1974).

 We do not accept defendant's assertion that the state's case against defendant was wholly circumstantial. Admissions or declarations against interest made by a defendant are direct evidence of his guilt and do not require the application of the circumstantial evidence rule nor the giving of an instruction pertaining to circumstantial evidence. *State v. Ayers,* 470 S.W.2d 534, 536[1] (Mo.banc 1971); *State v. Spica,* 389 S.W.2d 35, 53[27, 28] (Mo.1965), cert. den., 383 U.S. 972, 86 S.Ct. 1277, 16 L.Ed.2d 312 (1966); Notes on Use to MAI–CR 3.42. Defendant's letter to Kilgore and his statement to the detectives that he had been outside the liquor store when the charged crimes were committed were admissible as an exception to the hearsay rule if they constituted admissions against interest even though they included statements purporting to be exculpatory in nature. *State v. McCloud,* 328 S.W.2d 586, 588[2] (Mo.1959). In determining the nature of the letter to Kilgore and his statement to the detectives, we construe them in the light of all of the circumstances to determine whether they constitute an admission or declaration against interest. Boiled to essentials, the issue is whether the nature of the statement and letter is incriminating. "It has been said that any statement evincing a consciousness of guilt is such an admission." *State v. Patterson,* 516 S.W.2d 571, 573[3] (Mo.App.1974).

There is no substance to defendant's claim of inconsistency between what defendant told the detectives about not participating in the liquor store crimes and the state's contention that he was the perpetrator of those crimes. "The State was not bound by the self-serving statements made by the defendant even though the statements were testified to by the police officers in the State's case." *State v. Caldwell,* 434 S.W.2d 571, 575[5] (Mo.1968). The jury was free to disbelieve or reject the self-serving statement made by the defendant to the detectives. Thus, by rejecting the self-serving exculpatory portion of defendant's statement, the circumstance of defendant's admission to being present at the liquor store remained intact.

 Defendant's letter to Kilgore did not pose an inconsistency between Kilgore's cross-examination testimony and what the state sought to establish. The letter was not proffered as proof that Kilgore had heard defendant bragging about how he had shot the liquor store clerk and was going to get away with it. Rather, the letter was evidence of an oblique admission by defendant that he had, in fact, so bragged. Moreover, defendant's reminder that Kilgore had said he "wasn't a snitch", and defendant's suggestion to Kilgore to "stay solid" and "that everything is still mellow between me and you [sic], *understand"* (our emphasis), could reasonably be interpreted as a veiled threat against Kilgore's testifying "to the fact that you heard me braging [sic] about how I had shot the old man and was gonna [sic] get away with it." If a defendant threatens or attempts to persuade a potential witness to give false testimony, such a showing is properly receivable as evidence to establish defendant's guilt of the original charge and to show consciousness of guilt. *State v. Hicks,* 535 S.W.2d 308, 311[4] (Mo.App.1976).

Contrary to defendant's point, the last claimed inconsistency is not tenable for the simple reason that the state did not argue that the stocking cap and revolver belonged to defendant. Finding, in the car driven by defendant 36 days after the robbery and assault, the gun that was used in the robbery and a stocking which was "similar to the mask" worn by the robber was evidence that the items were accessible to defendant and permitted an inference, when considered with all the other facts, that the person to whom the instrumentalities of the robbery were available was the robber.

The proscription against inference-stacking is that an inference may not arise which is "dependent for establishment of one fact upon inference to be drawn from some other fact shown only by inference". *State v. Ring*, 346 Mo. 290, 304, 141 S.W.2d 57, 64–65[16] (banc 1940). The prohibition does not apply to drawing several inferences from the same proven facts if each inference is supported thereby [*State v. Feger*, 340 S.W.2d 716, 722[4] (Mo.1960)], and an inference based in part upon another inference and in part upon factual support is approved as being a parallel inference provided it is a reasonable conclusion for the jury to deduce. *Hurt v. Charles J. Rogers Transportation Co.*, 164 Ohio St. 329, 130 N.E.2d 820, 823[3] (1955). As advocated by defendant's point, the inference-stacking contended by defendant occurred in the three areas of what he terms to be inconsistencies. However, since the claimed inconsistencies have been dispelled, defendant's contentions anent inference-stacking have no merit.

We are of the opinion that the jury could reasonably infer from the collective impact of the following evidence that defendant committed the crimes in question: (1) A male Negro 5 feet 10 or 11 inches tall, weighing 160 to 170 pounds and 19 to 21 years of age robbed the liquor store clerk at revolver point; (2) defendant was a male Negro 5 feet 11 inches tall, weighing 165 pounds and was 20 years old; (3) during the course of the robbery two bullets were fired and recovered by the police; (4) one of the fired bullets hit the clerk; (5) the robber was wearing a gray stocking cap with two eyeholes cut in it; (6) when defendant was arrested 36 days after the robbery, the car he had been driving contained a revolver and a gray stocking cap; (7) the revolver found in the car looked like the revolver used in the robbery; (8) a ballistic testing of the revolver found in the car and the bullets recovered at the scene of the robbery and assault revealed that the recovered bullets had been fired from the revolver; (9) the gray stocking cap found in the car was similar to the mask worn by the robber and had two eyeholes cut in it; (10) defendant admitted to the detectives that he had been at the liquor store at the time the crimes in question were committed; (11) defendant had bragged about how he had shot the old man in the liquor store and was going to get away with it; and (12) defendant's letter to Kilgore contained a veiled threat or entreaty that Kilgore should not testify about defendant's bragging.

The reasonable inferences from the foregoing collection of facts impel this court to hold that there was sufficient substantial evidence to support the jury's verdict.

Judgment affirmed.

All concur.