**STATE of Missouri, Plaintiff-Respondent,**

v.

**Deborah Sue NEAL, Defendant-Appellant.**

No. 39597.

Missouri Court of Appeals, Eastern District, Division Two.

Nov. 16, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 14, 1979.

Application to Transfer Denied Jan. 15, 1980.

William J. Shaw, Public Defender, Joseph W. Downey, Asst. Public Defender, Clayton, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Kristie Green, Asst. Atty. Gen., Jefferson City, George R. Westfall, Pros. Atty., Steve H. Goldman, Asst. Pros. Atty., Clayton, for plaintiff-respondent.

STEWART, Judge.

Deborah Neal, the defendant, was convicted of Murder Second Degree in the death of her husband, Kenneth Neal.

For reversal defendant contends that the court erred in (1) overruling her objection to the admission into evidence of an axe and an ice pick, (2) overruling her objections to certain questions propounded to several veniremen, (3) striking a venireman for cause, (4) overruling her objection to testimony that prior to making a statement to the police she had conferred with her attorney for about two hours, (5) permitting improper rebuttal testimony, (6) refusing to give an instruction on circumstantial evidence, and (7) overruling objections to argument of the State. We affirm.

Defendant does not contest the submissibility of this cause therefore an extensive statement of the facts is not necessary.

Defendant and Kenneth Neal had lived together for about two years and had married approximately three and one-half months before Kenneth Neal's death. They had been having domestic problems. Kenneth had been drinking on the afternoon and evening of Saturday, October 2, 1976. He reported to work at 1:30 AM on Sunday and had more to drink through the early morning hours. When he left work at 7:30 AM on Sunday morning he was intoxicated. At the time of death his blood alcohol level was in excess of .3 which means that he would be in a near stupor.

In the early morning hours of the following Tuesday, the defendant led police to Mr. Neal's body in their home. He was lying on a bed with a knife protruding from the left side of his back. Covers had been placed over him. Defendant admitted that she had stabbed her husband on Sunday morning October 3. Defendant remained in the house for about two hours after the stabbing occurred. After telling her mother of the incident late Monday evening she met with other relatives in the early morning hours of October 5. The police were called and it was then that defendant accompanied the police to the house. Mr. Neal bled to death over a long period of time as a result of a stab wound. Because of his intoxication he was unable to seek help.

Defendant's evidence tended to indicate that the killing was in self-defense.

We first consider defendant's contention that the court erred in admitting into evidence as exhibits an axe and an ice pick that were found in the house subsequent to the crime. She argues that there was insufficient evidence to connect the exhibits with the crime.

Articles, instruments and weapons that have a tendency to explain the manner in which a crime was committed that are found at or near the scene of the crime subsequent to the commission of a crime are generally admissible. *State v. Rains,* 537 S.W.2d 219, 225 (Mo.App.1976).

In the present case the autopsy revealed that there were five knife wounds in the upper back of the victim; one of the wounds had penetrated into the right lung and one of them into the left lung. The three remaining wounds were superficial.[1] Deceased had bled to death as a result of the deep wound in the right side of the back. It took about two hours for the victim to die from this wound. The wound in the left side of the back, from which the knife protruded, showed very little blood indicating that it was inflicted just before the victim died. There were five parallel incision wounds in the right temporal parietal area of the scalp made by a heavy cutting instrument of considerable weight that had crushed the skull. The incisions had lengths of "two to one-half and one inch" indicating various angles at which it struck the skull. These incisions showed almost no blood indicating that the deceased was on the verge of death when they were inflicted.

There was also a round puncture wound in the left back that was about one-half inch deep made by an instrument like a pick or a nail. The instrument that caused this injury was different from the other two instruments that had been used upon Mr. Neal.

1. Defendant testified that the knife did not penetrate the first three times she stabbed the deceased.

The ice pick was found in the kitchen of the defendant's house and the axe was found in the basement. A jury could find that the ice pick was consistent with the round puncture wound in deceased's back described by the medical examiner as having been made by a pick or nail. Likewise, the axe, which we have examined and find to be very heavy, could have caused the crushing incisions found in Mr. Neal's skull. The axe and the ice pick were found subsequent to the occurrence. The court did not err in admitting these exhibits into evidence. *State v. Rains, supra.* See also *State v. Alexander,* 581 S.W.2d 389 (Mo. App.1979).

We next consider defendant's contention that the court erred in overruling her objection to questions propounded to jurors which she claims committed the jurors to return a verdict of guilty.

The basis for defendant's complaint is found in the following excerpt from the voir dire by the State.

"Now, there's going to be evidence in this case that the deceased in this case, Kenneth Neal, has struck Deborah Neal, and hit her in the head, before this particular day. Now, is there anybody here that because of this evidence, as I anticipate it will come out, feels that they automatically would not be able to find anyone guilty, based on this fact alone?

. . . . .

MR. GOLDMAN: What I'm asking is whether this particular fact in and of itself would automatically stop anyone from reaching a guilty verdict in this case.

. . . . .

All right, Now, let me just ask, I'll ask the question again, okay, in case it wasn't really clear. There will be evidence brought up, I'm sure, that in the past, before this particular day, October 3rd, that he had struck her in the past. Now, do you feel that you'd be, based on that alone, with no other evidence, on that fact alone, you'd be able to find a person guilty of murder on that particular day?

. . . . .

VENIREWOMAN HUTCHISON: I will again say yes or no. I don't really know what I'd do.

MR. GOLDMAN: Well, now, if the Court instructed you on the case that this is an element that you should consider, certainly you ought to consider, if the Court tells you to do that, but do you feel that if the issue was submitted to you, do you feel that just based on that fact alone, you'd be unable to—in other words, you'd say that would give a person a right to kill someone at a later—

VENIREWOMAN HUTCHISON: No, I don't think so. What I'm saying is I don't think he should have a right to go around striking someone else.

MR. GOLDMAN: Right. No one said that should be a right. What I'm saying is, if that evidence came out, it alone would affect you so that you'd say at a later day the person would have the right to kill the other person?

VENIREWOMAN HUTCHISON: No, I don't think so.

. . . . .

VENIREWOMAN HUTCHISON: Not on that alone, I don't think so.

MR. GOLDMAN: All right. You understand what I'm saying then?

VENIREWOMAN HUTCHISON: Umhum.

MR. GOLDMAN: Okay. Then I'll— it's important you decide this case for, you know, for my rights of the State and for her rights, too, to, the people are impartial and don't form opinions ahead of time, that it would make a conclusion they have to do one thing or the other without listening to the evidence, so you feel you could be openminded, listen to the case as a murder second degree case without reaching a conclusion, based on that evidence."

█ It is reversible error for counsel, on voir dire, to obtain from prospective jurors a commitment or pledge to act in a certain way should a particular set of facts be elicited in the trial. *State v. Katz Drug*

*Company,* 352 S.W.2d 678, 684 (Mo. banc 1961). Counsel may, however, probe the veniremen to determine preconceived prejudices that would preclude them from following the instructions in the case. See *State v. Isreal,* 537 S.W.2d 565, 567 (Mo. App.1976).

■ In the case before us counsel sought to determine whether assaults committed by a victim of a murder upon the defendant at some time in the past would in themselves preclude the veniremen from finding defendant guilty. Counsel did not seek to commit the venire to a finding of guilt under a given set of facts. He, in fact, admonished that he was not asking them to come to any conclusions before hearing the evidence. We find no error on this issue.

■ In a closely related issue defendant contends that the court erred in striking Venireman Ellebracht for cause. After considerable questioning of Mr. Ellebracht by counsel for both parties and the court, the following took place:

"MR. GOLDMAN [Assistant Prosecuting Attorney]: If he [Mr. Neal] struck her [Mrs. Neal] severely in the past, would that fact alone stop you from ever finding her guilty of murder in the second degree at a later date regardless of any other evidence or any instructions that the Court gave you?

VENIREMAN ELLEBRACHT: Yes, it would."

The trial court has broad discretion in determining the competence of jurors and should not hesitate to strike a juror for cause when there is an indication of partiality toward either party or preconceived prejudices. See *State v. Williams,* 538 S.W.2d 947, 949 (Mo.App.1976).

■ In this case the juror stated that he could not find a person guilty of unlawful homicide if the victim of the homicide had previously assaulted the accused. The juror thus advised the court that he could not follow the law. The court did not abuse its discretion in striking the juror.

■ Defendant next contends that the court erred in admitting into evidence the

fact that she conferred with her attorney before making a tape recorded statement that contradicted a portion of her previous oral statement made to a police officer. The issue arose when Officer Dabbs, a witness for the State, testified on direct examination that defendant stated that her husband was screaming at her as she ran from the home after the stabbing. Defendant made this statement before the police accompanied her to the house and first viewed the body. The officer made the statement part of his police report. This report was completed before defendant made a lengthy tape recorded statement. In the taped statement she did not testify that the deceased was screaming at her as she left the house. On cross-examination counsel for defendant elicited from the officer the fact that when defendant read the police report she denied that she had told the officer that her husband was screaming at her when she left the home. On redirect examination the officer testified that defendant conferred with her attorney for an hour and a half or two hours before she gave the tape recorded statement.

The primary thrust of defendant's argument is that *defendant's Fifth Amendment right to remain silent* was violated by evidence that she conferred with her attorney before giving the lengthy tape recorded statement which contradicted the statement given to the police officer. Defendant cites *State v. Roth,* 549 S.W.2d 652 (Mo.App. 1977), *State v. Stuart,* 456 S.W.2d 19, 22 (Mo. banc 1970) and *State v. Dowling,* 348 Mo. 589, 154 S.W.2d 749, 755 (1941). Each of these cases is authority for the general proposition that an accused's silence while under arrest cannot be used against him. In *Dowling* a police officer testified that Dowling stated that he was not going to say anything until he had seen an attorney. This testimony infringed on defendant's right to remain silent.

We do not have such a situation in the case at bar. In this case the State's witness testified that defendant stated the deceased was screaming at her when she left the house. The defense sought to impeach this

witness on cross-examination by showing that defendant later denied making this statement. The State could then rehabilitate its witness on redirect examination by showing the circumstances that intervened from the time she is alleged to have made the statement and the time she denied making the statement; that defendant had the opportunity to have counsel evaluate her actions and statements and for her to have reflected upon her earlier statement. *State v. Johnson,* 539 S.W.2d 493, 503 (Mo.App. 1976).

Defendant asserts that the court erred in admitting improper rebuttal testimony. During the trial there was evidence that defendant turned the air conditioning unit to a lower temperature when she left the house. Mr. Hoffman, defendant's father and a defense witness, was cross-examined as follows:

"Q. You recall telling me that you remembered her saying she turned the thermostat down?

A. I don't know whether she turned it up or down or what she done with it.

Q. You remember her talking about it?

A. She said something about a thermostat, yes.

Q. You recall her saying, 'I could have kept this quiet for two weeks'?

A. No, not really."

An assistant prosecuting attorney testified regarding a conversation with Mr. Hoffman to rebut Hoffman's testimony. The witness related that there was talk about the thermostat and then the following occurred:

"Q. Was there any talk about when someone might find out about it—the body?

A. In referring—

MR. DOWNEY: Object to—may we approach the bench, your Honor?

. . . . .

Q. (by Mr. Goldman) Did Mr. Hoffman tell you anything with regard to what Debbie Neal told him?

A. He said that Debbie Neal said she —'I could have kept quiet for two weeks.'"

Defendant objected to this rebuttal testimony on the ground the testimony did not contradict the testimony of Mr. Hoffman.

The scope of rebuttal is within the sound discretion of the trial court and we will not reverse except for abuse of discretion even though in the strictest sense the testimony is not proper rebuttal testimony. *State v. Myers,* 538 S.W.2d 892, 898 (Mo. App.1976). The testimony above indicates that the testimony of State's rebuttal witness is contradictory of Mr. Hoffman's testimony. We find no abuse of discretion on the part of the trial court.

Defendant contends that the court erred when it refused to give her requested instruction on circumstantial evidence. (MAI–CR 3.42). The trial court is not required to give a requested instruction on circumstantial evidence if there is any direct evidence of the crime charged. Admissions and declarations against interest may constitute direct evidence. *State v. Holman,* 556 S.W.2d 499, 508 (Mo.App.1977). In the present case defendant admitted to her brother, cousin and mother that she killed her husband. This was direct evidence that defendant committed the crime. The court was not required to give the requested instruction. *State v. Holman, supra.*

Finally, defendant complains of comments made by the State in closing argument. Reviewing applicable precedent it has been often stated that counsel is allowed broad latitude in closing argument. *Hoehn v. Hampton,* 483 S.W.2d 403, 408 (Mo.App.1972). The trial court in turn has a wide discretion in its control of argument and its rulings are reversible only for abuse of discretion where the argument is plainly unwarranted and clearly injurious. *State v. Schumacher,* 556 S.W.2d 199, 200 (Mo.App. 1977).

Defendant complains of three separate statements made by the prosecutor in argument. We shall consider them in the order in which they appear in the transcript. The first comment which defendant

objects to is the State's argument "You remember her mother's testimony, where he had the gun, and she [defendant] said, 'I was going to use that on you.'" This argument was apparently made in reference to the testimony of defendant's mother regarding an incident involving a gun at the Neal home the month before Mr. Neal's death. Mr. Neal had gone into "the other room and found a shotgun and brought it out." He asked defendant a question to which she replied "I'm going to use it." Even though the State's argument is not an exact statement of this testimony, it is up to the court and the jury, who heard the testimony and any inflections in the witness' voice, to determine what connotations to draw from the testimony. The statement and the testimony of defendant and others reveals a domestic scene lacking in tranquility. Defendant testified that she had been beaten by him; that he was required to sleep on the floor in the living room; that she at one time placed a starter's pistol in her drawer which she intended to use to frighten the deceased; and that she kept the knife that killed her husband under the mattress on her bed. The interpretation of the testimony of defendant's mother was warranted.

We also note that the court and the prosecutor admonished the jury to evaluate the argument in the light of "what was actually testified to." The statement was not so lacking in support as to result in reversible error. See *State v. Coleman,* 441 S.W.2d 46, 54 (Mo.1969).

■ Defendant also complains of prosecution statements to the effect that defendant was giggling and laughing about stabbing her husband when she made the tape recorded statement that was heard by the jury.

In closing argument the prosecution compared defendant's courtroom testimony with her taped statement and stated:

"You actually heard the tape, how she reacted two days after she did this murder, and listened, remember how she was. I mean, she was giggling about stabbing the man. She says, 'Maybe he's bionic, I don't know. You need a saw to saw into

him. He's made out of steel.' She's laughing about it."

The argument is reasonably accurate as to the statements made by defendant in her taped statement. Such statements could warrant the inference that she was taking the incident with some degree of lightheartedness. We have listened to the tape and did hear some sounds and exclamations that could be characterized as dry laughter or chuckles at times during the statement. We cannot say that the State's characterization is reversibly inaccurate. The jury heard the tape and could make their own judgment as they were told to do by the court.

Defendant also complains of the State's argument that "She told her relatives that she turned the air conditioner down, and nobody would know for two weeks—" because there is no evidence to support the statement. What we have said with respect to the rebuttal testimony amply answers this issue.

We find no reversible error. The judgment is affirmed.

STEPHAN, P. J., and KELLY, J., concur.