STATE of Missouri,
Plaintiff-Respondent,

v.

Royce Alan SHERRILL,
Defendant-Appellant.

No. 13155.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 6, 1983.

John D. Ashcroft, Atty. Gen., Dan Crawford, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

W. Henry Johnson, Douglas, Douglas & Johnson, Neosho, for defendant-appellant.

TITUS, Judge.

Defendant was jury-convicted of first degree murder (§ 565.003)[1] in connection with the September 10, 1981, killing of John W. Kemm (hereinafter Kemm) and was sentenced to life imprisonment. Defendant appealed when his post-trial motions were denied.

Three days before the charged homicide occurred, defendant became 19 years of age. He was employed as an orderly in a Joplin nursing home from 2:45 to 11 p.m. Kemm, who was 53 years old at the time of his death, had been a widely traveled concert organist for some 12 or 15 years. He was also organist at a Webb City church where his wife sang in the choir. On the night of September 9, 1981, the Kemms returned to their Joplin residence following choir practice when Kemm left his wife with the avowed intent of going to a Joplin night club to listen to music.

After defendant left work at 11 p.m. on September 9 he reportedly drank some whiskey before going to the Joplin residence of Jamie McKeel and Shannon Russell. Upon arrival at the home of his female friends defendant was not drunk and, following a brief discussion, defendant and Ms. Russell, also a minor, left in defendant's car and drove to Wild Bill's, a Joplin saloon, arriving near midnight. Following defendant's consumption of whiskey and beer for about an hour, Kemm, whom neither defendant nor Ms. Russell knew previously, approached the couple, introduced himself and bought about three rounds of drinks before the bar closed at 1:30 a.m. on September 10. However, before departing the bar Kemm bought some cans of beer and suggested the three "go party."

Kemm, driving his car, followed defendant's automobile, also occupied by Ms. Rus-

sell, to the residence of Ms. Russell and Ms. McKeel. The two house residents, defendant and Kemm visited and drank beer until 2:30 or 3:00 a.m. when the two men departed driving their respective vehicles. Before their departure, however, and while Kemm was in the bathroom, defendant told Ms. Russell and Ms. McKeel that he thought Kemm was queer and if so he was going to roll him. Defendant also told Ms. McKeel that he would be back.

With defendant in the lead and Kemm following, the duo drove to Wildcat Park south of Joplin to a part thereof known as Mother Nature's Crack which consists of a rock bluff some 45 or 50 feet high with a large crack therein which can be used to go from top to bottom and vice versa. Northeastward from the base of the cliff a distance of 80 feet is Shoal Creek. According to subsequent statements attributed to defendant, when he and Kemm arrived at the top of the cliff Kemm put his hands inside defendant's shirt and tried to kiss defendant on the neck and defendant pushed Kemm away. Kemm, said defendant, was not easily repulsed and tried to fondle defendant's privates but defendant either hit or kneed Kemm who fell. Defendant recounted that as Kemm was arising he stumbled backward off the cliff. He also told an officer he had "shoved" Kemm off the cliff because "the guy was gay." Defendant went down the crack to where Kemm had landed (presumably on his buttocks according to the coroner) and believed Kemm was still alive. Although defendant indicated that was where he had robbed Kemm, the latter's body, when found, was 75 feet from the base of the cliff and within five feet of the bank of Shoal Creek. Also, personal items of Kemm's, such as glasses, watch, etc., were found scattered from 9 to 40 feet along a path from the cliff base to the river. Kemm's clothing, when he was found, was mud covered with the exception of its clean pockets which had been turned and left inside out. From Kemm's body and clothing, defendant removed Kemm's

**1.** Statutory and rule references are to V.A.M.S. and V.A.M.R.

wallet and rings and returned to Kemm's car which he vandalized by removing therefrom the stereo and speakers and by relieving it of the spare tire and pump. The items stolen from Kemm and his automobile were later given to the authorities by the couple with whom defendant was residing at the involved times.

The court gave instruction No. 5 patterned after MAI–CR2d 15.12 as offered by the state. In part, that instruction reads: "If you find and believe from the evidence beyond a reasonable doubt: First, that . . . the defendant caused the death of . . . Kemm by striking, pushing, and causing him to fall, and Second, that he did so in robbing or attempting to rob . . . Kemm, . . . ." In his first point relied on defendant contends the court nisi erred in not adding, as offered by defendant's proffered but refused instruction, a third paragraph following paragraph "Second" which included an additional charge reading: " . . . and, Third, that the defendant is not entitled to an acquittal due to intoxication as submitted in Instruction No. 18, . . . ."

■ Instruction No. 18 concerned defendant's "special negative defense" under § 562.076 which states: "1. A person who is in an intoxicated or drugged condition whether from alcohol, drugs, or other substance, is criminally responsible for conduct unless such condition (1) Negatives the existence of the mental states of purpose or knowledge when such mental states are elements of the offense charged or of an included offense; . . . . 2. The defendant shall have the burden of injecting the issue of intoxication or drugged condition." See MAI–CR2d 3.30.1 and Notes on Use 5.

Albeit defendant asked and the court gave Instruction No. 18, the propriety of the giving thereof is doubtful and if it was error, which we do not decide, it was one for which defendant may not complain. *State v. Lowery,* 565 S.W.2d 680, 683–684[1] (Mo.App.1978). Not all degrees of intoxication present a defense under § 562.076. To warrant an instruction on such a defense, the evidence must show the defendant was so intoxicated that he did not know what he

was doing [*State v. Lee,* 647 S.W.2d 817, 819–820 (Mo.App.1983); *State v. Bienkowski,* 624 S.W.2d 107, 108[1] (Mo.App.1981)] and until defendant introduces evidence of the required degree of intoxication the issue need not be submitted to the jury. *State v. Gullett,* 606 S.W.2d 796, 806[4] (Mo.App. 1980). Although there was evidence anent defendant's drinking on the night in question and some witnesses friendly to defendant testified he was drunk in their opinion, his personal detailed accounts concerning his actions at all pertinent times in question attest to defendant's complete awareness of his deportment and conduct which negatives any degree of complete drunkenness which rendered him incapable of forming an intent to commit the charged crimes. Defendant was able to give the investigating officers detailed accounts of the events which occurred prior to, during and subsequent to what happened at Mother Nature's Crack. He accurately accounted for the things he took from Kemm and from Kemm's automobile. Defendant acknowledged that he drove to and from Wild Bill's and to and from Mother Nature's Crack with no apparent difficulty. He descended to and ascended from the difficult terrain where Kemm came to rest after falling off the cliff. Defendant was able to ascertain that Kemm was still alive after the fall and was able to remove the items he stole from Kemm's person and his automobile. Defendant's almost total recall of what happened before, during and after the pertinent events belies any degree of drunkenness which rendered him incapable of forming an intent to commit the crimes charged and it was not error for the trial court to reject the proffered instruction in lieu of given Instruction No. 5. *State v. Gannaway,* 649 S.W.2d 235, 238[4] (Mo.App.1983). Defendant's first point relied on is denied.

Defendant's second point relied on, in effect, is that the trial court erred in admitting State's Exhibit 19, a pair of trousers, into evidence because the evidence did not disclose the trousers were in the same condition as when Kemm's body was discovered

and the evidence did not establish a proper chain of custody of the trousers.

A detective sergeant from Joplin testified that before Kemm's body had been moved from where it had been found 75 feet from the base of the cliff from which Kemm had been pushed or had fallen, photographs had been taken of the body and photographic Exhibit 25 was one of the photos. The photograph was received into evidence without objection. Both the photograph and Exhibit 19 showed the trousers were soiled with mud or clay which existed between the base of the cliff and where the body was found. However, the pockets of the pants, which were turned inside out when Kemm's body was discovered, were free from the mud and clay present on the other parts of the trousers. After the photographs were taken and preliminary investigations were completed, Kemm's body, fully clothed, was transported by police to a vehicle and taken directly to a funeral home where Kemm's clothing was removed to accommodate an autopsy witnessed, inter alia, by the detective in question. The detective obtained Kemm's clothing, including the trousers, took it to the police station, tagged it and placed it in the evidence room at the police station where it remained until identified by him at trial.

■ To establish a chain of custody of an item of evidence it is not necessary to account for every hand-to-hand custody thereof between the time it is obtained and its introduction at trial. *State v. Payne,* 612 S.W.2d 353, 356[5] (Mo.App.1980). Evidence necessary to establish chain of custody is enough if it demonstrates a reasonable assurance the exhibit is the same and in the condition when first found. *State v. Branscomb,* 638 S.W.2d 306, 308[6, 7] (Mo.App. 1982). The admission of demonstrative evidence and whether it was in a properly established chain of custody is primarily within the discretion of the trial judge. *State v. Murray,* 630 S.W.2d 577, 581[9] (Mo. banc 1982); *State v. Branscomb, supra,* 638 S.W.2d at 307[3]. Moreover, "[c]hain of custody is an irrelevant issue where the exhibit [as here] is positively identified.

*State v. Ingram,* 607 S.W.2d 438, 441 (Mo. 1980)." *State v. Mangan,* 624 S.W.2d 156, 157[5] (Mo.App.1981). From the photographic exhibit evidencing the condition of the trousers and its pockets at the scene where Kemm's body was found, from the description thereof by the officer of their condition both at the scene of finding and when the trousers were removed at the mortuary, coupled with his identification of the trousers at trial, the judge could reasonably conclude the pants were in the same condition during those intervals and that the chain of custody was properly established. Ergo, defendant's second point relied on is denied.

■ Under his third point relied on defendant contends the trial court erred in alternately charging the jury that if it did not find defendant guilty of first degree murder, etc., it should consider whether he was guilty of second degree murder, manslaughter, first degree robbery, second degree robbery or stealing because the jury could have found defendant guilty of multiple offenses with which he was not charged in the amended information. Assuming, but not deciding, the court erred in giving any one or more of the instructions complained of, as defendant was convicted of murder in the first degree and none of the other crimes dealt with in the additional instructions, any error occurring by giving the additional charges would be harmless to defendant and concerning which he may not now successfully complain. *State v. McIlvoy,* 629 S.W.2d 333, 338, 339[8] (Mo. banc 1982); *State v. Oliver,* 572 S.W.2d 440, 446[5, 6] (Mo. banc 1978); *State v. Jackson,* 594 S.W.2d 623, 625[3] (Mo.1980); *State v. Frank,* 639 S.W.2d 209, 211[3] (Mo.App. 1982); *State v. Broomfield,* 637 S.W.2d 711, 713[4] (Mo.App.1981). We deny defendant's third point relied on.

Defendant next complains of the admission of State's Exhibit 2, a photograph of the upper portion of Kemm's body and head taken at the autopsy. The exhibit should not have been received, defendant argues, because he had stipulated to the identity of the victim, because the exhibit would in-

flame and prejudice the jury against defendant and because the photograph was not necessary to show intent, deliberation, or the nature of the wounds.

■ Appellate courts afford trial judges broad discretion in determining the admissibility vel non of photographic exhibits in criminal cases and the admission thereof is error only if an abuse of discretion is shown. Generally speaking, a photograph is far superior to words as a means of description for, as the saying goes, one picture is worth a thousand words. A photographic exhibit should not be rejected simply because it tends to be inflammatory. *State v. Weekley,* 621 S.W.2d 256, 260[7, 8] (Mo.1981).

■ The autopsy doctor testified concerning the low back area injuries received by Kemm in the fall from the cliff and that such injuries were consistent with a landing in a sitting position. In offering Exhibit 2 the state's attorney explained the exhibit was to demonstrate wounds received by Kemm under his chin and on top of his head and forehead which would be inconsistent with injuries one would receive by simply falling from the cliff and landing on his buttocks. The state's attorney also said the exhibit illustrated wounds received by Kemm when defendant kicked him, causing him to fall, which was inconsistent with defendant's explanation of the matter.

As the state has the heavy burden of proving defendant's guilt beyond a reasonable doubt, it should not be unduly limited in the quantum of its proof even though defendant made a tentative offer to stipulate as to the identity of the victim. *State v. Walker,* 639 S.W.2d 854, 858 (Mo.App.1982). We are of the opinion that no abuse of the trial court's discretion has been shown and therefore deny defendant's fourth point relied on.

Defendant's fifth point relied on claims the trial court erred in overruling his motion for judgment of acquittal made at the conclusion of the state's case and again at the close of all the evidence because the evidence was insufficient to indicate that Kemm was killed during the commission of a robbery in that the evidence indicated that Kemm fell from the cliff accidentally as defendant was repulsing homosexual advances and that it was only after Kemm had fallen that defendant decided to rob him.

■ We initially note that defendant waived any objection to the overruling of his motion for judgment of acquittal posed at the conclusion of the state's case when he adduced the testimony of witnesses in his own behalf. *State v. Ritterbach,* 637 S.W.2d 820, 822[1] (Mo.App.1982); *State v. Ritterbach,* 627 S.W.2d 894, 896[1] (Mo.App. 1982); *State v. Davis,* 611 S.W.2d 384, 386[2] (Mo.App.1981).

■ The corpus delicti in a homicide case consists of (1) the death of a human being and (2) the criminal agency of another in causing the death. These elements may be established by circumstantial evidence but are not shown until proved by the state that death was not the result of suicide, natural causes or accident. *State v. Black,* 611 S.W.2d 236, 240[4–7] (Mo.App. 1980). Defendant herein only contends death resulted from accident. Also, to justify a finding of guilt of murder in the perpetration of a robbery, the intent to rob must have been formulated at the time of the killing. *State v. Newman,* 605 S.W.2d 781, 786–787[5] (Mo.1980).

■ In determining the sufficiency of the evidence to sustain a criminal conviction, this court is obliged to accept as true all direct and circumstantial evidence and all reasonable inferences which are most favorable to the state and disregard the evidence and inferences contrary to a finding of guilt. Our chore is not to weigh the evidence, rather it is to determine whether there was substantial evidence to support the jury's verdict. Substantial evidence means evidence from which the trier of fact could find the issue in harmony therewith. *State v. Turner,* 623 S.W.2d 4, 6[1, 2] (Mo. banc 1981), cert. denied, 456 U.S. 931, 102 S.Ct. 1982, 72 L.Ed.2d 448 (1982); *State v. Ritterbach,* supra, 637 S.W.2d at 822[2, 3].

Viewing the evidence in light of the above noted principles, it was established that defendant and Ms. Russell came to know Kemm at a Joplin bar the night of September 9, 1981. When the bar closed at 1:30 a.m. on September 10, 1981, the trio went to the home of Ms. Russell and Ms. McKeel where the drinking continued and Kemm displayed a state of intoxication by tipping over in a chair and breaking a glass swan sitting on top of the stereo. Out of Kemm's sight and hearing defendant told the two women of his opinion that Kemm was a homosexual and, if so, he was going to take him out and "roll him." The word "roll" as used by defendant is defined: "[Slang] to rob (a drunken or helpless person)." Webster's New World Dictionary of the American Language, College Ed. p. 1262. Thus, defendant formulated the plan to rob Kemm before the two left the house and drove to Wildcat Park in separate vehicles near 3 a.m. Defendant had been to the park on previous occasions and said he knew that no one would be there at that time of day to bother them. Upon the pair's arrival at the park they walked to the top of the cliff from which Kemm fell because of being hit or kneed by defendant or because he was "shoved" by defendant. Immediately thereafter defendant robbed Kemm. Subsequent to being taken into custody defendant told a deputy sheriff that if Kemm "was queer I was going to roll him. Where this was to take place, at the time I didn't know for sure. But later on I figured we would go out to Mother Nature's Crack."

■ Albeit defendant does not dispute that he stole items from Kemm, he argues that he did not decide to do so until after Kemm had fallen from the cliff. However, from what defendant had told Ms. Russell and Ms. McKeel before departing for the park, the jury could find that defendant had then formulated the intent to rob Kemm and that thereafter causing Kemm to fall from the cliff was done in furtherance of the robbery. Defendant's reliance upon his own exculpatory statements that he did not decide to rob Kemm until after Kemm had fallen from the cliff is of no avail because it was the prerogative of the jury to reject defendant's exculpatory statements and to believe the statements made to Ms. Russell and Ms. McKeel before leaving their home. *State v. Powell,* 630 S.W.2d 168, 172 (Mo.App.1982). Defendant's fifth point relied on is denied.

Defendant's sixth point relied on is that the court erred in failing to give the circumstantial evidence instruction No. E which he offered and patterned after MAI–CR2d 3.42 because there was no direct evidence that Kemm received fatal injuries during the commission of a robbery. Rule 30.06(e) provides that if a point relates to the request of an instruction "such instruction shall be set forth in full in the argument portion of the brief." No such instruction appears in defendant's brief so defendant's sixth point is not subject to review. *State v. Lehman,* 634 S.W.2d 542, 545[9] (Mo.App.1982). However, as defendant was not, per Rule 30.09, afforded a second chance to do properly that which he should have done properly in the first place, we briefly review the point on its merits, if any.

■ Notes on Use 2 under MAI–CR2d 3.42 states: "This instruction may be given even if there is some direct evidence of guilt, though it need not be given at all unless the evidence is wholly circumstantial." In other words, the circumstantial evidence rule and MAI–CR2d 3.42 are applicable only when *all* of the evidence is circumstantial and there is no direct evidence of defendant's guilt. *State v. Ritterbach,* supra, 637 S.W.2d at 822–823[4].

■ As previously seen, defendant made numerous admissions that he either kicked, hit or pushed Kemm causing him to fall from the cliff (which produced injuries causing Kemm's death) and that he robbed Kemm of numerous items of personal property. Admissions or declarations against interest by a defendant are direct evidence of his guilt and do not require application of the circumstantial evidence rule or the giving of an instruction pertaining to circumstantial evidence such as MAI–CR2d

3.42. *State v. Williams,* 600 S.W.2d 120, 122[3] (Mo.App.1980); *State v. Neal,* 591 S.W.2d 178, 183 (Mo.App.1979); *State v. Holman,* 556 S.W.2d 499, 508[22] (Mo.App. 1977). Defendant's sixth point relied on is denied.

Defendant complains via his seventh point that the trial court erred in overruling his motion to dismiss the amended information upon which he was tried and in conducting the trial thereon without affording him a preliminary hearing on the amended information.

 As filed, the original information charged that "defendant unlawfully killed ... Kemm by striking him and pushing him off a cliff ... thereby causing him to die." The amended information of which defendant complains, charged that "defendant unlawfully killed ... Kemm by striking, pushing, kicking and causing him to fall ... thereby causing him to die." If a defense under the charge as originally made would be equally available after the amendment, and if defendant's evidence thereto would be equally applicable after as well as before the amendment, then defendant cannot be said to have been prejudiced by the amendment. *State v. Leake,* 608 S.W.2d 564, 565[2] (Mo.App.1980). Rule 23.08, in part, provides that "[a]ny information may be amended ... at any time before verdict ... if no additional or different offense is charged." In this matter defendant was charged from the outset with first degree murder for killing and robbing Kemm on the same date and at the same place. The only variance between the original and the amended informations is that the latter contained more details of defendant's acts employed in killing Kemm. This being so, we cannot hold that defendant was prejudiced by the amendment or that evidence available to the defendant prior thereto was not equally available after the amendment. E.g. See *State v. Prigett,* 470 S.W.2d 459, 462[5] (Mo.1971), where the second information was properly permitted when the first charged assault with only fists and feet and the second information, in conformance with the evidence, charged assault with fists, feet *and a bedpost.* Defendant's seventh point relied on is denied.

In his penultimate point relied on (No. 8) defendant contends the trial court erred by overruling his motion to suppress the statements he made to the law officers because the state failed to sustain its burden of proving those statements were made freely, and because of defendant's limited education and poor physical condition at the time it was impossible for defendant to give a knowing and intelligent waiver of his right to remain silent. As written, the point does violence to Rule 30.06(d) for it does not undertake, as required, to note "wherein and why" the state failed in its burden of proving the defendant's statements were freely made or "wherein and why" defendant's education and poor physical condition, whatever that may have been, prevented defendant from giving an intelligent and knowing waiver of his right to remain silent. Again, however, as defendant was not notified of these deficiencies as required by Rule 30.09, we will consider the point upon whatever merit it presents.

 When, as was done here, the admissibility of defendant's statements or confession has been challenged, the burden of proving their voluntariness falls upon the state by showing voluntariness by a preponderance of the evidence. The test employed for voluntariness is whether the totality of the circumstances deprived defendant of a free choice to admit, deny or to refuse to answer and whether physical or psychological coercion was of such a degree that defendant's will was overborne at the time he gave the statements or confessed. *State v. Buckles,* 636 S.W.2d 914, 923[16] (Mo. banc 1982). In conjunction with this it should be remembered that the trial court, in the first instance, determines the credibility of witnesses appearing on a motion to suppress statements and confessions and that this court defers to the trial court's superior position in which to determine credibility. *State v. Buckles,* supra, at 924; *State v. Hankins,* 599 S.W.2d 950, 953[1, 2] (Mo.App. 1980). Also, a defendant waives the right to remain silent or have counsel if during

an in-custody interrogation the *Miranda* warnings are given and uncoerced voluntary statements are made following the giving of such warnings. The state's burden of proving the statements were voluntarily made can be satisfied by showing that defendant was informed of his constitutional rights prior to the interrogation, that defendant understood those rights and that no physical force, coercion, promises or other means of inducement were employed. *State v. Boyer,* 646 S.W.2d 876, 879–880[3] (Mo.App.1983).

The evidence heard on the motion to suppress showed that when defendant was arrested and before he made any statements he was given the *Miranda* warnings prior to being transported to the police station. Upon arrival at the station defendant was given an interrogation advice of rights form which he read, said he understood and signed. About 30 to 45 minutes thereafter defendant gave a taped statement to the police who testified defendant was normal both physically and mentally throughout. Approximately an hour later, when an officer was sure the Miranda warning was given a second time, defendant was questioned for about 30 minutes. Later that day defendant was given a second interrogation advice of rights form which he said he understood and signed before being taken to the scene of the crime. Upon arrival at Mother Nature's Crack defendant was again given the *Miranda* warnings before he made other statements during the stay at the scene for some 30 to 45 minutes. There was no evidence that any kind of inducements were offered defendant to make the statements and although defendant testified otherwise, as above noted, the court was not required to believe defendant's self-serving pronouncements. Defendant's detailed testimony at the hearing on the motion to suppress as to the things that occurred at the time of the crime demonstrated his awareness of what transpired and an appreciation of the consequences of his statements irrespective of his alleged physical and mental condition. *State v. Lindsey,* 630 S.W.2d 191, 193[3] (Mo.App.1982). Defendant's age, education

to the ninth grade and lack of experience in criminal matters, while entitled to consideration in the totality of the circumstances, are not sufficient alone to prove his statements involuntary. Defendant's conduct, actions and assertions at the times involved did not brand him as a person of more limited capabilities than others of his age and background. After the state made a prima facie showing as to the voluntariness of defendant's statements to the investigating officers, it then became defendant's burden to produce evidence that his age, education and lack of experience deprived him of exercising free choice as to whether to make the statements vel non. *State v. Simpson,* 606 S.W.2d 514, 517[7] (Mo.App. 1980). The hearing produced no unassailable proof of any such fact. Defendant's eighth point relied on is denied.

Via defendant's ninth and last point relied on he asserts the trial court erred in not permitting the jury to hear the testimony of a witness which the court heard out of the hearing of the jury and then ruled to be inadmissible. The in camera witness testified that in either July or August of 1979, or some two years before the charged crimes herein occurred, Kemm had approached him in a Joplin park and "propositioned me." The witness also said that he had heard Kemm was "bisexual", i.e. he would "go with women or men either one."

Defendant argues that the courts have allowed prior specific acts in sex related offenses for the purpose of showing a propensity to commit the crime charged and that the trial court in this case should have allowed the jury to hear the testimony of his proffered witness because the proposition Kemm made to him was similar to the proposition Kemm made to defendant. However, cases cited by defendant do not support his argument. The cases relied on by defendant deal with situations of child molestation. *State v. Garner,* 481 S.W.2d 239 (Mo.1972); *State v. Cole,* 581 S.W.2d 875 (Mo.App.1979). In *Cole* at p. 876 it was there repeated that when defendant is on trial for a sexual assault, evidence is admissible as to other similar acts committed

about the same time on the same minor as part of a continuous and inseparable episode. The whole transaction is viewed as one, and as a part of the res gestae of the crime charged. Defendant's other citations relied on to demonstrate that evidence of other specific criminal acts is admissible to show motive or intent are not germane here. The additional cases cited by defendant are *State v. Shumate,* 478 S.W.2d 328 (Mo.1972) and *State v. Kornegger,* 363 Mo. 968, 255 S.W.2d 765 (1953). In *Shumate* the evidence was that prosecutrix, in a continuous series of acts, had been raped and sodomized repeatedly by four males during a single period extending over a long time. At p. 330[3], it was held that testimony of the acts of all four was admissible although defendant had been charged only with the crime of rape. *State v. Kornegger,* supra, 255 S.W.2d at 768[7], held in a case involving the taking of indecent and improper liberties with a female minor, that proof of other similar offenses not charged was admissible to show motive or intent, absence of accident or mistake, the identity of the defendant, or a common scheme or plan. The authorities cited by defendant, supra, are not persuasive for the admission of evidence that Kemm "propositioned" a party, not the defendant, two years previously, to demonstrate Kemm's propensity to commit the acts claimed by defendant.

Where the issue of self-defense arises in a trial, defendant may introduce evidence of the victim's violent and turbulent disposition through evidence of the victim's reputation in the community for those characteristics and only upon a showing that defendant was aware of the characteristics. *State v. Baker,* 626 S.W.2d 680, 681–682[3] (Mo.App.1981). Defendant acknowledges that he did not undertake to introduce evidence of Kemm's reputation for being violent and turbulent. Rather, defendant argues that by analogy to the foregoing authority he was entitled to introduce testimony of Kemm's bisexual tendencies. If such an analogy was proper, Kemm's bisexual tendencies cannot be shown by specific acts but only by his reputation in the community for those characteristics. Fur-

thermore, there was no showing that the previous incidents were ever known to defendant. *State v. Maggitt,* 517 S.W.2d 105, 107[1] (Mo. banc 1974).

As seen from a reading of the prior portions of this opinion, the testimony in the case was replete with accountings of Kemm's homosexual/bisexual conduct toward defendant at the times in question. Consequently, even if the trial court erred in not permitting the jury to hear the proffered testimony (and we hold it did not do so), the error was harmless to defendant. Defendant's ninth point is denied.

The judgment is affirmed.

FLANIGAN, P.J., GREENE, C.J., and CROW, J., concur.